UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | ) | |
| | ) | |
| JOANN LYNN RICCIO | ) | |
|      *Plaintiff* | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| EXAMSOFT WORLDWIDE, INC. AND | ) | |
| CONNECTICUT BAR EXAMINING | ) | |
| COMMITTEE, STATE OF CONNECTICUT | ) | May 28, 2024 |
|      *Defendants* | ) | |

## COMPLAINT

The Plaintiff, JoAnn Lynn Riccio ("Riccio or Plaintiff"), by and through her attorney, states as follows:

## PARTIES

1.  The Plaintiff, JoAnn Lynn Riccio ("Riccio or Plaintiff"), is a 68-year-old female who hopes one day to work as a pro bono attorney for Connecticut Statewide Legal Services where she worked for several years under Attorney John Bozzi receiving the "Pro Bono Paralegal Award" from the State of Connecticut.

2.  Defendant, the Connecticut Bar Examining Committee (Defendant, CBEC), is a Committee of the Judicial Branch of the State of Connecticut that is located and transacts its business within all Counties and Judicial Districts of the State of Connecticut. The CBEC violated the statutory rights of persons with disabilities in the administering of the remote Connecticut Bar Exam in July 2021.

3.  Defendant, ExamSoft Worldwide, Inc. ("ExamSoft"), is a digital assessment platform acquired by Turnitin in 2020. It is an entity offering examinations related to licensing and therefore is subject to §309 of the ADA, 42 U.S.C. § 12189. ExamSoft violated the statutory

rights of persons with disabilities in administering the remote Connecticut Bar Exam in July 2021.

## JURISDICTION AND VENUE

4. The District court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12133, and under 42 U.S.C. § 12189.

5. Venue is proper pursuant to 28 U.S.C. § 1391.

6. The Court has personal jurisdiction over ExamSoft Worldwide, Inc., because, upon information and belief, it transacts business in this State and the alleged acts occurred in Connecticut.

7. Upon information and belief, ExamSoft received significant monetary remuneration from Connecticut state entities to administer the remote bar in July 2021.

## APPLICABLE LAW

8. The CBEC and ExamSoft have disregarded the Americans with Disabilities Act and other laws resulting in injury to the Plaintiff as an examinee with disabilities protected by the ADA in discriminatory and unfair testing conditions by denying the Plaintiff previous approved and promised double-time accommodations to the remote bar in July 2021.

9. Citizens of Connecticut are required to take the bar examination administered by the CBEC, a public entity subject to Title II of the ADA under 42 U.S.C. § 12131, to be licensed to practice law in the State of Connecticut.

10. The CBEC is charged by the laws of the State of Connecticut with the duty to administer the Connecticut Bar Exam ("CBE") in a way that does not discriminate against a person with a disability. The CBEC is required (pursuant to 42 U.S.C. § 12131 et. ff and its final implementing regulations as well as 42 U.S.C. § 12189), as are private entities (pursuant to 42

U.S.C. § 12189 and C.F.R. §36.309), to provide test takers with disabilities with accommodations enabling equal access to the examination. The ADA requires that a person or entity – a testing agency or provider offering "examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes must offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangement for such individuals." 42 U.S.C. § 12189 (emphasis added).

11.  Under regulations implementing Title II of the ADA, public entities offering examinations must ensure that their exams do not provide qualified persons with a disability with aids, benefits, or services that are not as effective in affording equal opportunity to obtain the same result, to gain the same benefit or to reach the same level of achievement as that provided to others, 28 C.F.R. § 35.130 (b)(1)(iii), and may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35. 130(6)(6).

12.  Under regulations implementing §309 of the ADA, any private entity that offers such examinations must "assure that the examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)." 28 C.F.R. §36.309.

13.  Both Title II and Title III regulations also require public and private testing entities to provide modifications and auxiliary aids and services for individuals with disabilities unless the

entity can demonstrate an applicable defense. 28 C.F.R. §§ 35.130(b)(7). 35.160(6). 35.164; 28 C.F.R. §§ 36.309(b)(1)(iv-vi), (b)(2). 36.309(b)(3).

14.   This means that the CBEC is required by law to ensure that test takers subject to disabilities are provided accommodations so as to give them the same opportunity to pass the bar exam as those without disabilities.

15.   Defendant CBEC is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131 (1), and is therefore subject to Title II of the ADA, 42 U.S.C. §12131.

16.   28 C.F.R. §35.130(b)(1)(ii) states that a public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing or other arrangements, on the basis of disability afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others.

17.   28 C.F.R. §35.130(b)(1)(iii) states that a public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing or other arrangements, on the basis of disability provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reap the same level of achievement as that provided to others.

18.   28 C.F.R. §35.130(b)(3)(i) provides that a public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination based on disability.

19.   28 C.F.R. § 35.130(b)(1)(v) provides that a public entity, in providing aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the

basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's programs.

20. 28 C.F.R. §35. 130(b)(6) provides that a public entity may not administer a licensing or certification program in a manner subjecting qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability.

21. C.F.R. § 35.130(b)(3)(ii) provides that a public entity may not directly, or through contractual or other arrangements, utilize criteria or methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.

Here, the CBEC chose to use the ExamSoft platform to run the remote bar in July 2021, knowing the ExamSoft computer platform had been sued in the past over exam technical failures. In 2015, the company agreed to pay $2.1 million dollars to settle a consolidated class action brought by bar test takers who encountered delays in uploading their essay responses during the July 2014 bar exam. That problem impacted bar test takers in forty-three (43) states.

22. Both CBEC and ExamSoft have independent obligations to ensure that persons with disabilities are not discriminated because of their disability. ***Rolff Jensen and Associates, Inc. v. Eighth Judicial District Court of the State of Nevada, 282 P.3d 743 (Nev. 2012).***

23. The CBEC and its agent, ExamSoft Worldwide, Inc. failed to do this for the Plaintiff by refusing to account for the computer system crashes during bar exam testing so that the Plaintiff was unable to use her medical double-time accommodations granted to her by the CBEC.

## **<u>FACTUAL ALLEGATIONS</u>**

24.   JoAnn Lynn Riccio is a person with a disability under 42 U.S.C. § 12102. In particular, she has chronic fatigue syndrome (CFS). Overexertion, even to a level that may not seem excessive to others, slows recovery and is the most common cause of relapse in this syndrome. In a letter written to the CBEC requesting medical accommodations for double time to take the Connecticut bar, Dr. Alan G. Pocinki, M.D. **(Exhibit A)** wrote that CFS patients in general have limited tolerance for cognitive as well as physical activity, and it is important that they avoid exceeding their limits.

25.   Plaintiff also met all qualifications to take the Connecticut bar exam and therefore, is a qualified individual with a disability 42 U.S.C. §12131(2), and was able with modification to rules, policies and/or practices to meet the essential eligibility requirements for participating successfully in taking the Connecticut bar exam.

26.   The CBEC is certified to test all individuals in order to certify them admission to the Connecticut Bar in order to legally practice Connecticut law.

27.   Upon information and belief, ExamSoft received significant monetary remuneration from Connecticut state entities to administer the remote bar in July 2021.

28.   For two years, the CBEC used remote testing during the COVID pandemic (2020 and 2021). The testing was designed by the state of Connecticut in conjunction with ExamSoft (who was found negligent for 2.1 million dollars in a Class Action lawsuit for bar testing several years ago). Knowing this, the CBEC still decided to use it for individuals who took the bar exam remotely due to COVID restrictions. Due to the disastrous results of the Examsoft platform the CBEC switched to ILG Technologies, whose software administers bar exams and used the ILG software for the February 2022 bar exam.

29.   The CBEC was required during COVID to design their online remote testing along with ExamSoft to accommodate bar test takers, including those with disabilities.

30.  The Plaintiff hopes to work as a Pro Bono attorney for Connecticut Statewide Legal Services where she worked for several years as a paralegal under Attorney John Bozzi and received the Pro Bono Paralegal award from the state of Connecticut. As an attorney, she will be able to do much more for the people who need legal assistance.

31.  On July 27, 2021, the Plaintiff, JoAnn Lynn Riccio (Riccio) was scheduled to take the CBE remotely with the approved medical accommodations of double time,

32.  The Plaintiff was granted double-time to complete the bar because of a disability recognized under the ADA.

33.  The CBEC provided the testing protocol along with ExamSoft instructions and the software to take the test as well as instructions on what to do if there was a system crash. There was no form provided to submit to the CBEC in case a system crash occurred. Other states did include a system crash incident form to be filled out if a system crash occurred.

34.  On Tuesday morning, July 27, 2021, the ExamSoft platform crashed while Riccio was taking an essay and the computer crashed twice on Friday, July 30, 2021, once in the morning and once in the afternoon. On July 27, 2021, the first day of testing, in the evening, Plaintiff received an email from ExamSoft stating that some applicants had faced technical difficulties and therefore their time would be extended. On Wednesday morning, there was no email from the CBEC stating how the Plaintiff would receive extra time as told by the ExamSoft email so the Plaintiff continued the bar on Wednesday with no extra time given. Plaintiff did the MBE questions (multiple choice questions on Wednesday and Thursday) still not being given any extra time. On Friday morning, after the first (Multi Performance Test (MPT) there was a system crash and Plaintiff seriously considered not taking the second MPT due to a feeling that her computer would crash again in the afternoon. Plaintiff emailed the CBEC that Friday at 12:20 p.m. telling the CBEC about the Tuesday morning crash and the Friday morning crash and

asking them what to do. Plaintiff then decided to do the afternoon MPT knowing full well that the system could crash again, which it did. Plaintiff did not receive an email from the CBEC until 4:46 pm that Friday afternoon, when the Connecticut bar was officially over. The CBEC's email response was that applicants were put back into the test within 60 seconds from where they left off and unfortunately may have lost work that had not been saved within the prior 59 seconds. Plaintiff lost at least 15 minutes on the essay on Tuesday morning and at least 15 minutes for MPT1 in the morning and fifteen minutes for MPT2 in the afternoon as well as the MPT files not being restored in the format before the system crash. This reduced testing time for all three system crashes resulted in the lack of fulfillment of the double time accommodation granted to the Plaintiff pursuant to the ADA.

35. The CBEC offers services and activities where individuals with disabilities take their bar examination and rely on the CBEC as the only institution authorized to provide this.

36. The CBEC and ExamSoft must accommodate disabled test takers under the ADA providing them the same opportunity to take the exam with their non-disabled peers. This **includes** adjusting for software disruptions when a person is given extra time per the ADA to complete the test. The CBEC and ExamSoft failed to adjust for the system crashes and as a result Plaintiff was unlawfully precluded from successfully taking the bar exam.

37. The CBEC and ExamSoft failed to serve individuals with disabilities by not providing appropriate medical accommodations for individuals with disabilities by not providing sufficient steps to assess, identify, plan, and prepare appropriate accommodations for individuals including:

> a. The CBEC and ExamSoft did not have a plan in place to deal with system crashes so that the Plaintiff could get the allotted time she was approved for pursuant to the ADA to complete the exam.

b. The CBEC and ExamSoft failed to examine options for supports and services for individuals who require assistance to take the exam whether equipment based or time based or both.

c. The CBEC and ExamSoft failed to offer extra time to complete the sections of the bar (the essay on Tuesday and the two MPT's on Friday morning and Friday afternoon) to the Plaintiff knowing that a computer crash had occurred.

d. The CBEC and ExamSoft failed to engage in an interactive process with the Plaintiff once being informed within thirty days of the notification of the bar results by a certified, return receipt letter by Attorney Thomas Moriarty of Glastonbury, Connecticut, to the CBEC. Attorney Moriarty never received a response to his letter.

e. The CBEC unlawfully delegated its ADA obligation to ExamSoft who they knew had a class action lawsuit settled against them for an inferior and dangerous software platform to take the July 2021 remote bar exam.

38.  Plaintiff experienced three separate crashes on two testing days (Tuesday morning and Friday morning and Friday afternoon) resulting in lost valuable double-time for the plaintiff along with the fear of not knowing what was going on and when it would happen again while taking the bar.

39.  The Plaintiff lost valuable testing time to go to another room to get the instructions (because no other material was allowed in the room with the computer while taking the bar) to restore the bar exam back to the computer screen that had nothing on it now. Once the computer system was restored with the test on it, the essay on Tuesday morning and the MPT's on Friday morning and Friday afternoon were not restored to the position they were before the system

crash. All this decreased Plaintiff's approved ADA testing time for taking the bar and the grade needed to pass the bar.

40.   On August 16, 2021 (within 30 days of the July 27, 2021 bar), Riccio sent a certified, return receipt letter to Judge Anne Dranginis of the Connecticut Bar Examining Committee (CBEC), the Connecticut Supreme Court, the American Bar Association (ABA), the National Conference of Bar Examiners (NCBE), the Association of Academic Support and ExamSoft outlining the entire four days of testing with the three ExamSoft system crashes stating that the Plaintiff was under the ADA for medical accommodations for double-time.  At **no time** was action taken by any of these entities to resolve the situation despite being put on immediate notice (within the necessary 30 days to notify) of the problems that occurred during the remote bar exam.

41.   Riccio received a survey from the National Conference of Bar Examiners (NCBE) after the bar and the Plaintiff outlined the three ExamSoft crashes that occurred and never received a response from the NCBE.

42.   Unlike what Delaware did during its bar exam administered remotely during the Covid-19 pandemic, Riccio was not told that an incident report had to be filled out in the event of computer problems nor was any report ever furnished to the Plaintiff.

43.   Unlike what Delaware did during its bar exam administered remotely during the Covid-19 pandemic, Connecticut did not adjust scores upward to account for ExamSoft system failures as well as other states such as California, North Carolina, Colorado and Illinois **who reached out to its applicants** with remedies to those bar takers who experienced an ExamSoft software failure. The CBEC failed to rectify the faulty exam score even after being notified by email to the CBEC and several certified, return receipt letters to the CBEC. Plaintiff refers to the

Connecticut Practice Book  – General Provisions Sec. 2-11A in asking the Court to reconsider

her scores and grant admission to the Bar.


### Sec 2-11A. APPEAL FROM DESICION OF BAR EXAMINING COMMITTEE CONCERNING CONDITIONS OF ADMISSION.

(a) A decision by the bar examining committee prescribing conditions for admission to the bar under Section 2-9 (b) or on an application to remove or modify conditions of admission under Section 2-11 (a) may be appealed to the superior court by the bar applicant or attorney who is the subject of the decision. Within thirty days from the issuance of the decision of the bar examining committee the appellant shall: (1) file the appeal with the clerk of the superior court for the judicial district of Hartford and (2) mail a copy of the appeal by certified mail, return receipt requested or with electronic delivery confirmation, to the office of the statewide bar counsel and to the office of the director of the bar examining committee as agent for the bar examining committee. The statewide bar counsel shall be considered a party for purposes of defending an appeal under this section.

(b) The filing of an appeal shall not, of itself, stay enforcement of the bar examining committee's decision. An application for a stay may be made to the bar examining committee, to the court or both. Filing of an application with the bar examining committee shall not preclude action by the court. A stay, if granted, shall be on appropriate terms.

(c) Within thirty days after the service of the appeal, or within such further time as may be allowed by the court, the director of the bar examining committee shall transmit to the reviewing court a certified copy of the entire record of the proceeding appealed from, which shall include a transcript of any testimony heard by the bar examining committee and the decision of the bar examining committee. By stipulation of all parties to such appeal proceedings, the record may be shortened. The court may require or permit subsequent corrections or additions to the record.

(d) The appellant shall file a brief within thirty days after the filing of the record by the bar examining committee. The appellee shall file its brief within thirty days of the filing of the appellant's brief. Unless permission is given by the court for good cause shown, briefs shall not exceed thirty-five pages.

(e) The appeal shall be conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the bar examining committee are not shown in the record, proof limited thereto may be taken in the court. The court, upon request, shall hear oral argument.

(f) Upon appeal, the court shall not substitute its judgment for that of the bar examining committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the appellant have been

prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) in violation of constitutional provisions, rules of practice or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the bar examining committee or take such other action as may be necessary. For purposes of further appeal, the action taken by the superior court hereunder is a final judgment.

(g) In all appeals taken under this section, costs may be taxed in favor of the statewide bar counsel in the same manner, and to the same extent, as costs are allowed in judgments rendered by the superior court. No costs shall be taxed against the bar examining committee, except that the court may, in its discretion, award the appellant reasonable fees and expenses if the court determines that the action of the bar examining committee was undertaken without any substantial justification. "Reasonable fees and expenses" means any expenses not in excess of $7500 which the court finds were reasonably incurred in opposing the committee's action, including court costs, expenses incurred in administrative proceedings, attorney's fees, witness fees of all necessary witnesses, and such other expenses as were reasonably incurred.

(h) All information relating to the conditional admission of an attorney, including information submitted in connection with the appeal under this section, shall be confidential unless otherwise ordered by the court.

44.  The Plaintiff, on August 16, 2021, wrote a certified, return receipt letter to Judge Anne Dranginis of the Connecticut Bar Examining Committee and the Connecticut Supreme Court explaining the three separate ExamSoft computer crashes that took place while she took the remote bar from July 27, 2021 through July 30, 2021.  **Plaintiff never received a response to this letter.**

45.  On September 14, 2021, Riccio received a letter from the CBEC that Plaintiff was unsuccessful on the test and that they were reviewing the test score because of technical difficulties that had occurred to the Plaintiff.

46.  As required by Section 2-11A(a), on October 8, 2021, Riccio wrote a certified, return receipt letter to the CBEC and Judge Anne Dranginis within the thirty day notice as required by Rule 2-11A (a) explaining again what had happened to her (losing at least fifteen minutes on an

essay on Tuesday and losing at least 15 minutes of testing time for the first MPT in the morning and for the second MPT in the afternoon.   Plaintiff also wrote that most importantly, when the essay and MPT's were restored on the Plaintiff's computer, they were not in the format that the Plaintiff had written them in before the computer crashed.

47.   On October 8, 2021, Attorney Thomas Moriarty of Moriarty, Paetzold and Sherwood of Glastonbury, Connecticut wrote a certified return receipt letter to Judge Anne Dranginis of the CBEC stating that the three ExamSoft computer crashes adversely affected her scores and most likely resulted in her not passing the exam and asked them to reconsider her scores and grant admission to the bar.  **Attorney Moriarty never received a response to his letter.**

48.   On October 19, 2021, the CBEC emailed the Plaintiff to discuss the technical issues that Plaintiff experienced while taking the bar. It stated that the score reflected the Plaintiff's UBE (Uniform Bar Exam) score and raw scores **and that the CBEC understood that this may not be a true assessment of Plaintiff's performance**. It also stated that the CBEC conducted further analysis in addition to viewing the video and other evidence and that they used statistical analyses using information on Plaintiff's known performance on unaffected portions of the exam. The CBEC requested that the NCBE research and assessment department perform these additional analyses which utilized two methods:

1. To project scores on the MBE and written components based on the percentage of points earned on the unaffected parts of these components.

2.  To predict total scores using a linear regression model based on the scores obtained on the unaffected parts of the exam.

The CBEC wrote that they reviewed the material provided by the NCBE and that the projected score using percentages did not result in a **projection** of a passing score and the linear regression model did not predict a **probability** of a passing total score. The email stated that

based on all the data available, the Committee determined there was **insufficient evidence** to conclude that Plaintiff's performance met the criteria for admission to the bar. The analyses used by the NCBE did not take into account the Plaintiff's ADA medical accommodations of double-time that was lost while taking the bar and the email never asked to review the Plaintiff's laptop to see exactly the amount of time that the Plaintiff lost and how the answer files were restored in a haphazard manner.

Also, there are many disadvantages to using linear regression when the relationship between the variables of what is being measured is not linear and there are data outliers, such as the Plaintiff's double-time to take the test. In this situation, the dataset is not linear and a straight line does not fit the data properly as it would for test takers who do not have double-time and this makes for low accuracy of linear regression models. The email goes on to say they are sorry they could not provide better news for the Plaintiff and that Plaintiff may apply for the February 2022 bar with no filing fee and then at the end of the email it says there will be an $800 dollar filing fee.

49.  Riccio then visited Attorney James Sullivan of Logan, Vance, Sullivan and Kores of Torrington, Connecticut, for a matter unrelated to this, and mentioned this issue to him.

50.  On December 20, 2021, Attorney Sullivan wrote a letter to Judge Anne Dranginis of the CBEC asking the CBEC to reconsider its position regarding Plaintiff's admission to the bar due to technical difficulties experienced during the remote bar.

51.  Judge Anne Dranginis replied to this letter stating there was no request from Riccio concerning her admission to the Connecticut bar and that her August 16, 2021, letter was informational only.

52. That is an incorrect statement because Attorney Thomas Moriarty sent a certified, return receipt letter to her on October 8, 2021, as stated above, **asking them to reconsider their decision with no reply to his letter.**

53. Referring to Section 2-11A(a), Riccio, represented by Attorney Thomas Moriarty, wrote a certified letter to the CBEC on October 8, 2021, within the thirty days of September 14, 2021 asking the CBEC to reconsider their decision due to the technical failures that occurred while Plaintiff took the bar.

54. Section 2-11A(b) states that the filing of an appeal, which is what the Plaintiff did in her October 8, 2021 letter, requesting the CBEC to reconsider its decision.

55. Riccio is requesting the Court to consider an appeal of the decision of the CBEC under Section 2-11A(f)(5) where the decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. **Exhibit B** is a timeline of what happened to the Plaintiff during the entire July 2021 remote bar.

56. In addition to Riccio's request for consideration of an appeal from the CBEC's decision, there are violations of the American Disability Act (ADA), the Rehabilitation Act of 1973, and state laws that the Plaintiff experienced as outlined below.

## COUNT 1:

## CBEC VIOLATIONS OF THE AMERICANS WITH DISABILITES ACT
### (Damages)

57. Riccio realleges and incorporates by reference the allegations set forth in paragraphs 1 – 56, above.

58. The acts and omissions alleged in paragraphs 1 – 56 constitute discrimination done with deliberate indifference in violation of title II of the Americans with Disabilities Act (ADA) and its implementing regulations. 42 U.S.C. §§12132, and 28 C.F.R. §§ 35.130(b).

59.  The failure of the CBEC to fulfill its obligations under the ADA has caused the Plaintiff to suffer actual and compensatory damages, including emotional distress and consequential damages.

## COUNT2:

### CBEC VIOLATIONS OF THE AMRICANS WITH DISABILITIES ACT
### (Injunctive Relief)

60.  Riccio realleges and incorporates by reference the allegations set forth in paragraphs 1 – 56 above.

61.  The acts and omissions alleged in paragraphs 1 – 56 constitute discrimination done with deliberate indifference in violation of Title II of the Americans with Disabilities Act (ADA) and its implementing regulations. 42 U.S.C. §§ 12132, and 28 C.F.R. §§ 35.130(b).

62.  The inability to practice law as a result of the failures to carry out the obligations under the ADA necessitate the court mandating: 1) admission of Plaintiff to the bar; or alternatively 2) mandate the Connecticut Bar Examining Committee **conduct the hearing it should have undertaken** upon being given notice by the Plaintiff of the system crashes relating to the Connecticut bar exam and the impact on the loss of Plaintiff's medical accommodation of double-time to take the bar.  Unless such injunctions are issued, the Plaintiff will continue to have her rights as a person with a disability under the ADA denied.

## COUNT 3:

### CBEC VIOLATIONS OF THE REHABILITATION ACT OF 1973
### 29 U.S.C. §794 (Damages)

63.  Riccio realleges and incorporates by reference the allegations set forth in paragraphs 1 -56, above.

64.   During the Covid-19 **pandemic, the Connecticut Judicial Branch received coronavirus relief funds (Exhibit C, p.3** ).  Accordingly, the CBEC is subject to §504 of the Rehabilitation Act, 29 U.S.C. §794, and the remedies for those violations contained at 29 U.S.C. §794a.

65.   The acts and omissions alleged in paragraphs 1 – 56 were done with deliberate indifference and constitute discrimination in violation of §504 of the Rehabilitation Act (29 U.S.C. §794).

66.   The inability to practice law because of the failures to conduct the obligations under the Rehabilitation Act caused Riccio to suffer actual, compensatory, and consequential damages, including the inability to practice law.

## COUNT 4:

### CBEC VIOLATIONS OF THE REHABILITATION ACT OF 1973
### 29 U.S.C. §794 (Injunctive Relief)

67.   Riccio realleges and incorporates by reference the allegations set forth in paragraphs 1 – 56, above.

68.   During the Covid-19 pandemic, the Connecticut Judicial Branch received coronavirus relief funds (**Exhibit C** ). Therefore, the CBEC is subject to §504 of the Rehabilitation Act, 29 U.S.C. §794, for those violations contained at 29 U.S.C. §794.

69.   The acts and omissions alleged in paragraphs 1 – 56 constitute discrimination in violation of §504 of the Rehabilitation Act 29 U.S.C. §794.

70.   The inability to practice law as a result of the failures to carry out the obligations under the Rehabilitation Act necessitate the court mandating: 1) admission of plaintiff to the bar; or alternatively 2) mandate that the Connecticut Bar Examining Committee **conduct the hearing it should have undertaken** upon given notice of the system software crashes relating to the

Connecticut, July 2021 remote bar exam.  Unless such injunctions are issued, plaintiff will continue to have her rights as a person with a disability under the Rehabilitation Act denied.

## COUNT5:

## CBEC VIOLATION OF 42 U.S.C. §12189

71.  Riccio realleges and incorporates by reference the allegations set forth in paragraphs 1- 56 above.

72. 42 U.S.C. §12189 requires any person offering examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes to offer such examinations or courses in a place and manner accessible to person's with disabilities or offer alternative accessible arrangement for such individuals.

73.  28 C.F.R. §35.130(b)(1)(ii) states that a public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing or other arrangements, on the basis of disability afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others.

74.  28 C.F.R. §35.130(b)(1)(iii) states that a public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing or other arrangements, on the basis of disability provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reap the same level of achievement as that provided to others.

75.  28 C.F.R. §35.130(b)(3)(i) provides that a public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination based on disability.

76.  C.F.R. § 35.130(b)(3)(ii) provides that a public entity may not directly, or through contractual or other arrangements, utilize criteria or methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.

77.  As alleged in the complaint, Plaintiff endured numerous system crashes and did not receive additional time to compensate for those crashes so as to have her disabilities measured by the exam rather than her abilities.

78.  As alleged in this complaint, ExamSoft did not respond to the Plaintiff's certified, return receipt letter that the system had crashed multiple times over the course of several days.

79.  As alleged in this complaint, Plaintiff did not receive additional time after the system crashed and therefore did not receive her accommodations per the ADA that were previously approved.

<u>**COUNT 6:**</u>

**NEGLIGENCE OF EXAMSOFT WORLDWIDE, INC.**

80.  Paragraphs 1 – 56 of this complaint are hereby incorporated into this count. This is an action brought against Defendant Examsoft ("ExamSoft" or "Defendant") for violations, negligence, intentional and negligent misrepresentations, and breach of contract. Defendant develops, owns, and operates an online proctoring software that administered the remote Connecticut bar in 2020 and 2021.

81.  Riccio brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in administering the Connecticut Bar exam. Defendant failed to provide Plaintiff with an operational system to accommodate the Plaintiff whose accommodations granted pursuant to the ADA were recognized by the CBEC, and accommodations granted pursuant to the ADA to take the bar exam.

82. Riccio is a bar applicant in the State of Connecticut who was required to use ExamSoft to take the July 2021 Connecticut bar remotely.

83. The software failed to fully function and resulted in Plaintiff not receiving her medically approved double-time pursuant to the ADA for taking the Connecticut bar.

84. This court has personal jurisdiction over the defendant because the Connecticut bar exam gives rise to this lawsuit and was administered by defendant CBEC 1) in the State of Connecticut and 2) the contract by which the exam was administered was performed in Connecticut.

85. Riccio is a resident of the state of Connecticut and is therefore a domiciliary of Connecticut.

86. ExamSoft is a Delaware corporation with its principal place of business at 5001 LBJ Freeway, Suite 700, Dallas, Texas, 75244. Defendant develops, owns, and operates an online proctoring software of the same name that was used in the administration of the July 2021, remote Connecticut bar exam.

## COUNT 7:

### EXAMSOFT: VIOLATION OF ADA 42 U.S.C. §12189, 28 C.F.R. §36.309

87. Riccio realleges and incorporates herein paragraphs 1 – 56 of this complaint.

88. 28 C.F.R. §36.309(b)(1)(i) requires a private entity offering an examination must be administered so as to best ensure that , when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills.

89. C.F.R. §36.309(b)(1)(vi) requires an entity administering such exams to respond in a timely manner to request for modification, accommodation, to ensure equal opportunity for individuals with disabilities.

90. C.F.R. §36.309(b)(2) provides that required modification to an examination may include changes in the length of time permitted for completion of the examination and adaptation of the way the examination is given.

91. As alleged in the complaint, the Plaintiff endured numerous system crashes and did not receive additional time to compensate for those crashes so as to have her disabilities measured by the exam rather than her abilities.

92. As alleged in this complaint, ExamSoft did not respond to the Plaintiff's certified, return receipt letter that the system had crashed multiple times over the course of several days.

93. As alleged in this complaint, Plaintiff did not receive additional time after the system crashed and therefore did not receive her accommodations per the ADA that were previously approved.

## COUNT 8:

## EXAMSOFT: VIOLATION OF 42 U.S.C. §12203(b)

94. Riccio realleges and incorporate herein paragraphs 1 – 56 of this complaint.

95. 42 U.S.C. §122039(b) prohibits interfering with any individual in the exercise of any rights granted by the ADA.

96. By refusing to timely accommodate the Plaintiff and to grant extra time to Riccio when the system crashed numerous times over the course of several days, ExamSoft interfered with the Plaintiff's ability to take the remote July 2021 Connecticut bar exam that she was otherwise qualified and authorized to take.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff seeks equitable relief, damages (actual, compensatory,

emotional, and consequential) and attorney's fees for Defandants' wrongful acts.

Plaintiff Demands 2.0 Million Dollars.

**THE PLAINTIFF**
JoAnn Lynn Riccio

By: /s/ Kenneth A. Votre
*Kenneth A. Votre*
*# ct05981*
*Votre and Associates, PC*
*8 Frontage Road*
*New Haven, CT 06514*
*Tel: 203-498-0065*
*Fax: 203-825-3595*
*votrelaw@votreandassociates.com*

Page 22 of 22