# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOANN LYNN RICCIO,
  *Plaintiff*,

   v.        No. 3:24-cv-955 (VAB)

EXAMSOFT WORLDWIDE, INC. AND
CONNECTICUT BAR EXAMINING
COMMITTEE,
  *Defendants*.

## RULING AND ORDER ON MOTION TO DISMISS

Joann Lynn Riccio ("Plaintiff") has brought suit against Examsoft Worldwide, Inc.

("Examsoft") and the Connecticut Bar Examining Committee ("CBEC") (collectively,

"Defendants") and for alleged violations of the Americans with Disabilities Act ("ADA") against

both Defendants, for alleged violations of Section 504 of the Rehabilitation Act of 1973 ("Section

504") against CBEC, and for state law claims against Examsoft. *See* Amended Complaint, ECF

No. 16 (Sept. 25, 2024) ("Am. Compl.").

Examsoft and the CBEC have moved to dismiss the Amended Complaint in its entirety.

Examsoft Mot. to Dismiss, ECF No. 35 (Jan. 7, 2025) ("Examsoft Mot."); CBEC Mot. to Dismiss,

ECF No. 22 (Oct. 23, 2024) ("CBEC Mot.").

Ms. Riccio has moved to amend her Complaint to add Chairperson Hon. Anne C. Dranginis

of the CBEC as a defendant for purposes of prospective relief only. ("Mot. to Amend")

For the following reasons, Defendants' motions to dismiss, ECF Nos. 22 and 35, are

**GRANTED**.

Ms. Riccio's motion to amend, ECF No. 42, is **DENIED**.

Ms. Riccio's ADA claims against CBEC and Examsoft are dismissed without prejudice for lack of jurisdiction but without leave to amend.

Ms. Riccio may move for leave to amend her Complaint only as to the following claims no later than **September 5, 2025**:

1) To the extent she can plausibly allege ongoing violations of federal law and seeks prospective relief, Ms. Riccio may move for leave to amend to bring claims for injunctive relief as to Judge Draginis in her official capacity.

2) To the extent she can state a plausible basis for inferring that CBEC may receive federal funding, Ms. Riccio may move for leave to amend on the issue of whether CBEC receives federal funding such that CBEC has waived its sovereign immunity under Section 504.

3) To the extent she can remedy the deficiencies identified herein, Ms. Riccio may move for leave to amend her state law claims against Examsoft, although the Court may decline to exercise supplemental jurisdiction over such claims if Ms. Riccio fails to allege a basis for federal subject matter jurisdiction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

CBEC allegedly is a Committee of the Judicial Branch of the State of Connecticut that administers the Connecticut Bar Exam ("CBE"). Am Comp. ¶ 2, 9–10, 15. The Connecticut Judicial Branch allegedly received coronavirus relief funds during the Covid-19 pandemic. *Id.* ¶ 64, 68.

Examsoft allegedly is a "digital assessment platform" that offers licensing examinations. *Id.* ¶ 3. The CBEC allegedly "chose to use the Examsoft platform to run the remote bar in July

2021, knowing the Examsoft computer platform had been sued in the past over exam technical failures." *Id.* ¶ 21.

Ms. Riccio is a 68-year-old female who allegedly has chronic fatigue syndrome ("CFS"). Am Comp. ¶¶ 1, 24. Due to this syndrome, overexertion allegedly slows her recovery. *Id.* ¶ 24.

Ms. Riccio allegedly requested and was approved for a medical accommodation from CBEC for double time to take the July 2021 CBE. *Id.* ¶ 24, 32.

"[T]he CBEC [allegedly] provided the testing protocol along with Examsoft instructions and the software to take the test as well as instructions on what to do if there was a system crash." *Id.* ¶ 33. Ms. Riccio alleges, however, that "[t]here was no form provided to submit to the CBEC in case a system crash occurred." *Id.* ¶ 33.

On July 27, 2021, the Examsoft platform allegedly crashed the morning Ms. Riccio took the bar exam. *Id.* ¶ 34.

That evening, Examsoft allegedly sent an e-mail to Ms. Riccio "stating that some applicants had faced technical difficulties and therefore their time would be extended." *Id.*

The following morning, CBEC allegedly did not inform Ms. Riccio how to receive extra time, and so she continued the bar exam without receiving additional extra time. *Id.*

On July 30, 2021, while Ms. Riccio was taking the bar exam, "there was a system crash." *Id.* ¶ 34. At 12:20 p.m. that day, Ms. Riccio allegedly sent an e-mail to the CBEC to inform them of the crash on July 27, 2021, and the morning of July 30, 2021. *Id*. The system allegedly crashed again while Ms. Riccio was taking the bar exam that afternoon. *Id.* At 4:46 p.m. that day, after the CBE allegedly "was officially over," the CBEC allegedly responded that "applicants were put back into the test within 60 seconds from where they left off and unfortunately may have lost work that had not been saved within the prior 59 seconds." *Id.*

Ms. Riccio alleges that she "lost at least 15 minutes" during each of the three crashes, and that "the [Multi Performance Test ("MPT")] files [were] not . . . restored in the format before the system crash." *Id.*

She alleges that "[t]his reduced testing time for all three system crashes resulted in the lack of fulfillment of the double time accommodation granted to the Plaintiff pursuant to the ADA." *Id.*

On August 16, 2021, Ms. Riccio allegedly sent a letter to Judge Anne Dranginis of the CBEC, the Connecticut Supreme Court, the American Bar Association ("ABA"), the National Conference of Bar Examiners ("NCBE"), the Association of Academic Support, and Examsoft "outlining the entire four days of testing with the three Exam Soft system crashes stating that the Plaintiff was under the ADA for medical accommodations for double-time." *Id.* ¶ 40. "[N]o action [allegedly] was taken by these entities" in response to Ms. Riccio's letter. *Id.*

On September 14, 2021, Ms. Riccio allegedly received a letter from the CBEC informing her that she "was unsuccessful on the test and that [CBEC] [was] reviewing the test score because of technical difficulties that had occurred to [her]." *Id.* ¶ 45.

On October 8, 2021, Ms. Riccio allegedly wrote to the CBEC and Judge Dranginis explaining the system crashes that occurred during her CBE, including the lost testing time and that the MPTs were not in the format that she had written before the computer crash. *Id.* ¶ 46. On that same date, Attorney Thomas Moriarty allegedly wrote to the CBEC and Judge Dranginis "stating that the three Examsoft computer crashes adversely affected her scores and most likely resulted in her not passing the exam and asked them to reconsider her scores and grant admission to the bar." *Id.* ¶ 47.

On October 19, 2021, the CBEC allegedly sent an e-mail to Ms. Riccio and stated that "the CBEC conducted further analysis in addition to viewing the video and other evidence and that they

used statistical analyses using information on [her] known performance on unaffected portions of the exam," and that the CBEC had determined that "there was insufficient evidence to conclude that [Ms. Riccio's] performance met the criteria for admission to the bar." *Id.* ¶ 48.

On December 20, 2021, Attorney James Sullivan allegedly wrote to Judge Dranginis "asking the CBEC to reconsider its position regarding Ms. Riccio's admission to the bar due to technical difficulties experienced during the remote bar." *Id.* ¶ 50. Judge Dranginis allegedly "replied to this letter stating there was no request from Riccio concerning her admission to the Connecticut bar and that her August 16, 2021, letter was informational only." *Id.* ¶ 51.

CBEC allegedly "switched to ILG Technologies, whose software administers bar exams and used the ILG software for the February 2022 bar exam." *Id.* ¶ 28.

### B. Procedural History

On May 29, 2024, Plaintiff filed her initial Complaint. Complaint, ECF No. 1.

On September 5, 2024, CBEC filed a motion for a more definite statement. Mot. for More Definite Statement, ECF No. 14.

On September 25, 2024, Plaintiff filed an Amended Complaint, which is the operative pleading in this case. Am. Compl.

On October 23, 2024, CBEC filed a motion to dismiss the Amended Complaint. CBEC Mot.

On October 30, 2024, the Court denied as moot CBEC's motion for a more definite statement, in light of the filing of the Amended Complaint. Order, ECF No. 25.

On January 7, 2025, Examsoft filed its motion to dismiss. Examsoft Mot.

On January 21, 2025, Ms. Riccio filed her memorandum in opposition to CBEC's motion to dismiss. Opp'n to Mot. to Dismiss, ECF No. 41 ("Opp'n re CBEC").

On January 23, 2025, Ms. Riccio filed her motion to amend. Mot. to Amend.

On January 29, 2025, CBEC filed an objection to Ms. Riccio's motion to amend. Objection to Mot. to Amend, ECF No. 47 ("Obj. re Mot to Amend").

On February 18, 2025, CBEC filed a reply in support of its motion to dismiss. Reply, ECF No. 49 ("CBEC Reply").

On March 14, 2025, Ms. Riccio filed her opposition to Examsoft's motion to dismiss. Opp'n re Mot. to Dismiss, ECF No. 52 ("Opp'n re Examsoft").

On March 26, 2025, Examsoft filed its reply. Reply, ECF No. 53 ("Examsoft Reply").

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[A] defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC*

*v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

CBEC and Examsoft have each filed motions to dismiss the Amended Complaint. CBEC argues that Ms. Riccio's ADA and Section 504 claims, and her requests for injunctive relief under those statutes, are barred by the doctrine of sovereign immunity. In addition, CBEC argues that she fails to plead a plausible claim under either Title II or Section 504, and that her Title III claim fails, as such claims may not be brought against public entities.

Examsoft argues that Ms. Riccio's ADA claims fail because Examsoft does not administer the CBE, and thus cannot offer accommodations, nor does it currently provide the digital assessment platform used in the exam. In addition, Examsoft argues that Ms. Riccio's state law claims should be dismissed for failure to state a claim.

The Court will first address Defendants' arguments to dismiss Ms. Riccio's claims under Rule 12(b)(1) based on Eleventh Amendment immunity as to claims against CBEC, and lack of standing as to claims against Examsoft, and then will address both Defendants' arguments to dismiss the Complaint under Rule 12(b)(6).

### A. Sovereign Immunity

The Eleventh Amendment of the Constitution bars suits against a state in federal court unless the state has waived its immunity. *See Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996) (citing *Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890)); "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006); *see also Alden v. Maine*, 527 U.S. 706, 756 (1999) (recognizing that only arms of the State can assert the State's immunity). A state's waiver of immunity is found only where express language or overwhelming implication from the text allow no other interpretation than a waiver of immunity. *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 448 (2d Cir. 1999) ("[W]aiver is found only where stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974))).

CBEC argues that because it is an arm of the state and no exceptions to the Eleventh Amendment apply, Ms. Riccio's claims against CBEC are barred by sovereign immunity.

Ms. Riccio alleges that CBEC is "a Committee of the Judicial Branch of the State of Connecticut," Am. Compl. ¶ 2, and does not dispute that CBEC is an arm of the state.[1] *See Campbell v. City of Waterbury*, 585 F. Supp. 3d 194, 201 (D. Conn. 2022) ("The Connecticut Judicial Branch is an arm of the State of Connecticut."). She argues, however, that exceptions to Eleventh Amendment immunity apply, and requests leave to amend to include claims against Judge Dranginis of the CBEC in her official capacity.

The Court will address Ms. Riccio's remaining claims in turn.

### 1. The ADA Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This statutory provision "authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 546 U.S. 151, 154 (2006).

Title III of the ADA prohibits discrimination on the basis of disability in public accommodations. As relevant here, Section 12189 of Title III states that "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer

---

[1] Ms. Riccio also alleges that CBEC is a "public entity" as defined in the ADA, *id.* ¶ 9, 15, and her allegations in the Complaint are likely sufficient to establish that CBEC is an "arm of the state." *See also T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 81 n.2 (2d Cir. 2024), *cert. denied sub nom. T. W. v. NY Bd. of L. Examiners*, No. 24-714, 2025 WL 1426672 (U.S. May 19, 2025) (finding Plaintiff "conceded the Board's status" as an arm of the state where complaint alleged "the [New York State Board of Law Examiners] *is a public entity and state instrumentality* subject to the nondiscrimination requirements of Title II of the Americans with Disabilities Act." (emphasis in original)); *see also T.W. v. New York State Bd. of L. Examiners*, No. 16-CV-3029 (RJD) (MMH), 2022 WL 2819092, at *1 (E.D.N.Y. July 19, 2022), *aff'd*, 110 F.4th 71 (2d Cir. 2024) (applying "six-part 'arm of the state' test" set forth in *Mancuso v. New York State Thruway Authority*, 86 F.3d 289 (1994), and to conclude that the New York State Board of Law Examiners is an arm of the state).

alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. "Even though it purports to regulate only 'private' entities, this regulation has been interpreted to apply to the [some] State Board of Bar Examiners." *Argen v. New York State Bd. of L. Examiners*, 860 F. Supp. 84, 87 (W.D.N.Y. 1994) (applying to New York State Board of Law Examiners); *see also Bartlett v. New York State Bd. of L. Examiners*, 970 F. Supp. 1094, 1128–29 (S.D.N.Y. 1997), *aff'd in part, vacated in part on other grounds*, 156 F.3d 321 (2d Cir. 1998), *cert. granted, judgment vacated*, 527 U.S. 1031 (1999), *and aff'd in part, vacated in part*, 226 F.3d 69 (2d Cir. 2000) ("Although Title III generally applies only to private entities, the examination provision has unanimously been held to apply to public entities, and specifically to state bar examinations." (collecting cases)).

In addition, "Congress has unambiguously purported to abrogate states' immunity from Title II claims." *Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir. 2010); *see also id.* ("Under section five of the Fourteenth Amendment, Congress can abrogate the immunity to enforce the substantive rights guaranteed by the Fourteenth Amendment."). The Supreme Court has developed a three-part test for determining whether an ADA claim abrogated the Eleventh Amendment: "lower courts will be best situated to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 151 U.S. at 159; *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013).

CBEC argues that Congress's abrogation of sovereign immunity under the ADA cannot be applied to Plaintiff's claims against CBEC because (1) Ms. Riccio fails to plead a plausible ADA

claim, and, even if she had done so, she fails to show that CBEC's conduct violates the Fourteenth Amendment.[2] CBEC Mot. at 13–22.[3]

In response, Ms. Riccio argues that she has adequately pled that she suffers from a disability, and that she has alleged an ADA violation that violates the Fourteenth Amendment because she was denied her full double testing time and because her letters were ignored. Opp'n re CBEC at 13–15.

In reply, CBEC contends that because "CBEC's decision to issue Plaintiff a failing score was rationally related to the performance of its important—'essentially judicial'—function of screening qualified applicants for admission to the bar" and "CBEC rationally could have concluded that Plaintiff did not pass the exam and the alleged malfunctions had no impact." Reply at 6. In addition, CBEC argues that under the Second Circuit's holding in *T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 81 n.2 (2d Cir. 2024) ("*T.W. II*"), CBEC's conduct does not violate the Fourteenth Amendment and Title II does not validly abrogate sovereign immunity. *Id.* at 7–9.

The Court agrees.[4]

### i. *Georgia* Step One: Whether CBEC allegedly violated the ADA

At step one, this Court must determine whether the Plaintiff has adequately pled a violation of the ADA. *T.W.*, 2022 WL 2819092, at *6 ("At the first Georgia step we ask whether any aspect of the Board's alleged misconduct constitutes a violation of Title II." (citing *Mary Jo C.*, 707 F.3d

---

[2] CBEC also argues that Ms. Riccio's Title III claim fails because this section does not apply to public entities. CBEC Mot. at 31–32. Other district courts in this Circuit have permitted Title III claims to be brought against public entities in the context of bar examinations. *See Argen*, 860 F. Supp. at, 87. The Court need not reach the issue of whether Title III can apply to CBEC here, however, as it concludes that sovereign immunity bars Ms. Riccio's claims.

[3] Where the internal pagination conflicts with the ECF-generated pagination, this Ruling and Order shall refer to the ECF-generated pagination.

[4] Because "[i]n the context of this case, title II and title III of the ADA impose largely the same requirements," the Court does "not address title III of the ADA separately." *Bartlett v. New York State Bd. of L. Examiners*, 226 F.3d 69, 78 (2d Cir. 2000)

at 152 ("if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end."))). To prove a violation of Title II of the ADA, a plaintiff must establish that: "(1) that [they are] a 'qualified individual' with a disability; (2) that [they were] excluded from participation in a public entity's services, programs or activities or [were] otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [their] disability." *Mary Jo C.*, 707 F.3d at 153.

Here, Ms. Riccio alleges that "she has chronic fatigue syndrome" and "[o]verexertion, even to a level that may not seem excessive to others, slows recovery and is the most common cause of relapse in this syndrome." Am. Compl. ¶ 26. As a result, "constru[ing] the complaint in the light most favorable to the plaintiff," *York*, 286 F.3d at 125, she has plausibly alleged that she has "a physical . . . impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

There are "three available theories" of discrimination that can be used to establish the third prong of an ADA and Rehabilitation Act claim: (1) intentional discrimination (disparate treatment); (2) failure to make a reasonable accommodation; and (3) disparate impact. *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Here, Ms. Riccio alleges that CBEC failed to provide a reasonable accommodation.

Both the ADA and the Rehabilitation Act "may require reasonable modifications to assure equal access to services for disabled individuals." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 338 (D. Conn. 2015). "A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). A "demonstration that a disability makes it difficult for a plaintiff to access benefits that

are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Henrietta D.*, 331 F.3d at 277. "[T]he question of what constitutes a reasonable accommodation under the ADA requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." *Mary Jo C.*, 707 F.3d at 165 (internal quotation marks and citations omitted).

While Ms. Riccio concedes that CBEC granted her an accommodation, double time to take the July 2021 CBE, she argues that the CBEC's failure to implement additional accommodations in response to the technical difficulties she faced during the exam failed to provide her with meaningful access to the exam. *See* Am. Compl. ¶ 31, 37. CBEC argues that "losing approximately 48 minutes of testing time from the additional two days CBEC had given [Ms. Riccio]" due to "unpredictable software malfunctions. . . [that] could not be avoided" does not give rise to a reasonable accommodation claim. *See* CBEC Mot. at 16–17. CBEC further argues that "CBEC still only issued Plaintiff a failing score after multiple statistical analyses concluded that the malfunctions did not impact Plaintiff's ultimate performance." *Id.* at 19.

Accepting non-conclusory allegations in the Amended Complaint as true, however, Ms. Riccio raises questions of fact regarding the reasonableness of CBEC's accommodations. For example, Ms. Riccio alleges that the statistical analysis CBEC used does not account for test takers who were granted double time to take the bar. Am. Compl. ¶ 48. In the absence of factual development regarding the statistical model used and the potential impact of Ms. Riccio's specific disability, a final determination on this issue is inappropriate on a motion to dismiss. *See Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016)("The reasonableness issue . . . cannot be determined on the pleadings [where] the relevant factors are numerous and balancing them requires a full evidentiary record.").

As a result, Ms. Riccio has pled a plausible claim under the ADA, and the Court will proceed to the next *Georgia* factor.

### ii. *Georgia* Step Two: Whether CBEC allegedly violated the Fourteenth Amendment

State discrimination on the basis of disability is subject to rational basis scrutiny. *See City of Cleburne, Tex., v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). Thus, the Court must find the alleged classification here constitutional so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 136-38 (2d Cir. 2013) (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 219 (2d Cir. 2012)); *see also Spavone*, 719 F.3d at 138 (holding "a reasonable public official in the position of [Commissioner of the Department of Corrections or Director of Temporary Release Programs] could reasonably have believed there was a rational basis for distinguishing between leaves of absence for the treatment of mental illness as opposed to other sorts of illness.").

As discussed above, while Ms. Riccio alleges that CBEC failed to accommodate her disability by not providing her full double time accommodation, because CBEC used a statistical analysis to determine that, even if Ms. Riccio had received the full amount of time afforded under CBEC's accommodation, she would have been unsuccessful on the CBE, there is a rational basis for CBEC's failure to provide additional accommodations. As a result, CBEC's conduct does not violate the Fourteenth Amendment, and the Court must proceed to step three.

### iii. *Georgia* Step Three: Whether Congress's abrogation was nevertheless valid

Having determined that CBEC's alleged conduct may violate the ADA, but does not violate the Fourteenth Amendment, in considering "whether Congress's purported abrogation of sovereign

immunity . . . is nevertheless valid," *Georgia*, 151 U.S. at 159, the Court "must: (a) identify the scope of the constitutional right at issue; (b) examine whether, in enacting Title II, Congress identified a history and pattern of unconstitutional discrimination by states in the relevant context; and (c) determine whether the right and remedies created by the statute are congruent and proportional both to the constitutional rights it purports to enforce and to the record of violations adduced by Congress." *T.W. II*, 110 F.4th at 82 (citing *City of Boerne v. Flores*, 521 U.S. 507, 529–366 (1997)).

As to the scope of the constitutional right at issue, as another court in this Circuit noted, and the Second Circuit affirmed, "whether framed as the right to bar examination accommodations, or the right to practice law, [Plaintiff]'s complaint implicates no constitutional right nor any fundamental right subject to heightened judicial scrutiny." *T.W. v. New York State Bd. of L. Examiners*, No. 16-CV-3029 (RJD) (MMH), 2022 WL 2819092, at *6 (E.D.N.Y. July 19, 2022), *aff'd*, 110 F.4th 71 (2d Cir. 2024). "In sum, the right at issue here—a disabled person's right to practice her chosen profession—is not afforded heightened scrutiny." *T.W. II*, 110 F.4th at 85.

As to the second factor, the Second Circuit has likewise found that "Congress has not identified 'a longstanding pattern of disability discrimination in [the context of] professional licensing.'" *T.W. II*, 110 F.4th at 85 (quoting *Guttman v. Khalsa*, 669 F.3d 1101, 1119 (10th Cir. 2012)).

Similarly, as for congruence and proportionality, the Second Circuit in *T.W. II* held that "Title II's abrogation of state sovereign immunity is not congruent and proportional as applied to professional licensing of disabled individuals." 110 F.4th at 87.

Accordingly, given the similarities between *T.W. II* and this case, which both involve alleged ADA violations for failure to accommodate on the basis of disability in the context of bar

licensing exams, and the absence of any argument or caselaw suggesting a different result here, the Second Circuit's decision in *T.W. II* is controlling, and Eleventh Amendment immunity bars Ms. Riccio's Title II claim. *See T.W. II*, 110 F.4th at 91 ("Title II of the ADA does not validly abrogate sovereign immunity in the context of professional licensing").

### 2. The Section 504 Claim

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, . . . , shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. As a result, "§ 504 applies only to those government agencies or departments that accept federal funds, and only those periods during which the funds are accepted." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 n.2 (2d Cir. 2001).

"'When providing funds from the federal purse, Congress may require as a condition of accepting those funds that a state agree to waive its sovereign immunity from suit in federal court.' . . . Congress did so when it enacted Section 504 of the Rehabilitation Act." *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021) ("*T.W. I*") (quoting *Garcia*, 280 F.3d at 113). "Immunity waiver under Section 504 of the Rehabilitation Act, however, is not without limit[,]" and "[a] State and its arms can . . . 'avoid Section 504's waiver requirement on a piecemeal basis, by simply accepting federal funds for some departments and declining them for others.'" *T.W. I*, 996 F.3d at. 92 (quoting *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000)).

The Second Circuit has recognized "three ways by which a State entity may waive its immunity to suit under Section 504":

> First, the entity may *directly* request and receive federal financial assistance that is conditioned on Section 504 coverage. Second, the

entity may be a "program or activity" of a "department, agency, special purpose district, or other instrumentality of a State or of a local government," "any part of which" receives federal aid. And finally, the entity may *indirectly* receive federal financial assistance through *another* entity that requests and receives the Federal financial assistance in the first instance and then *extends* that money to the non-requesting entity.

*T.W. I*, 996 F.3d at 93 (quoting 29 U.S.C. § 794(b)) (emphasis in original).

"[T]he party asserting Eleventh Amendment immunity . . . bear[s] the burden of demonstrating entitlement." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015).

CBEC argues that because it is an independent, self-funded entity, it is not an entity that "receiv[es] Federal financial assistance" under Section 504 that has waived Eleventh Amendment immunity. CBEC Mot. at 20–26.

In response, Ms. Riccio argues that she is entitled to discovery as to whether CBEC takes federal funding, and her allegations must be taken as true for the purposes of deciding the motion to dismiss. Opp'n re CBEC at 15.

The Court disagrees.

Ms. Riccio's alleges that "[d]uring the Covid-19 pandemic, the Connecticut Judicial Branch received coronavirus relief funds," and that CBEC is "a Committee of the Judicial Branch of the State of Connecticut." Am. Compl. ¶¶ 2, 64, 68. In *T.W. I*, however, the Second Circuit, in the context of the New York state court system, found that "while '[t]here is no bright-line test for determining what constitutes a department,' the entire judicial system is *not* generally a 'department, agency, special purpose district, or other instrumentality' for Section 504 purposes." *T.W. I*, 996 F.3d at 101 (quoting *Hobbs v. Fla. Bd. of Bar Exam'rs*, No. 4:17-cv-422-RH/CAS, 2018 WL 5905467, at *5 (N.D. Fla. June 16, 2018)); *see also T.W. I*, 996 F.3d at 100 (collecting cases from several Circuits "declining to hold that a judicial subunit's receipt of federal funds waives the immunity of a state's whole judiciary").

18

Ms. Riccio submits as an exhibit to her Amended Complaint testimony from the Chief Court Administrator's Appropriations Committee Budget Presentation, which claims that the Judicial Branch "[has] sought federal and state funds to meet our needs and [has] had very limited success in [its] efforts to do so" and provides an example of funding for a Call Center project that received a small amount of federal funds. Ex. C. to Am. Compl., ECF No. 16 at 35. The letter does not indicate that the Judicial Branch allocated federal funding to CBEC or any bar licensing programs, and Ms. Riccio does not offer any allegations suggesting that is the case in her Amended Complaint. As a result, in light of the Second Circuit's opinion in *T.W. I*, Ms. Riccio's allegations that the Connecticut Judicial Branch accepted federal funding is insufficient to find that the CBEC, a unit of the state judicial system, waived its sovereign immunity under Section 504. *See T.W. I*, 996 F.3d at 101 ("[T]he entire judicial system is *not* generally a 'department, agency, special purpose district, or other instrumentality' for Section 504 purposes." (emphasis in original)).

While the Court must "[c]onstru[e] all ambiguities and draw[] all inferences in [Ms. Riccio's] favor," "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Here, CBEC has represented that it is a self-funded entity that is administratively independent from the Judicial Branch and that it has not directly or indirectly received federal funding, *see* Decl. of Lisa Valko, ECF No. 22-2 (Oct. 23, 2024) ("Valko Aff."). Although Ms. Riccio alleges, in her opposition brief, that she "found a situation where the platform that the bar was run on accepted federal funding," Opp'n re CBEC at 15, she provides no further context or support for this proposition in her brief or in the Amended Complaint.

Moreover, to the extent the "platform" Ms. Riccio refers to is the Examsoft platform used during the July 2021 CBE, the fact that CBEC contracted with an entity that accepted federal funding in administering the July 2021 CBE is insufficient to establish CBEC's waiver of sovereign immunity. *See T.W. I.*, , 996 F.3d at 94 ("As the Supreme Court has repeatedly affirmed, if a State entity merely obtains 'indirect economic benefits' from federal funding but does not actually *receive* federal funding, it has not waived immunity." (citing *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986) ("The statute covers those who receive the aid, but does not extend as far as those who benefit from it.")) (emphasis in original)); *see also Garcia*, 280 F.3d at 114 ("[I]n assessing whether a state has made a knowing and intentional waiver, the Supreme Court has instructed that 'every reasonable presumption against waiver' is to be indulged." (quoting *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999)).

As a result, CBEC has met its burden in showing that it is entitled to sovereign immunity on the Section 504 claim, and Ms. Riccio has failed to show "by a preponderance of the evidence" that CBEC has waived sovereign immunity such that this Court has jurisdiction over her claims. *See Makarova*, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."); *see also Corey v. W. Connecticut State Univ.*, No. 3:03CV0763 (DJS), 2004 WL 514837, at *2 (D. Conn. Mar. 10, 2004) ("Although [Plaintiff] has alleged that WCSU has accepted federal funds during the time period of September through December of 2002, an allegation standing alone is insufficient to meet Corey's burden under Rule 12(b)(1). Corey must present some evidence that WCSU has in fact accepted federal funds during the relevant time period in order to establish that WCSU has waived its sovereign immunity defense.").

Accordingly, based on the allegations in the Amended Complaint and the record before the Court at this time, sovereign immunity likely applies to Ms. Riccio's Section 504 claims. To the extent Ms. Riccio can state a plausible basis for inferring that, despite the evidence CBEC has presented, there is nonetheless reason to believe CBEC may receive federal funding, she may move for leave to amend.

### 3. The Injunctive Relief Claims

A narrow exception to Eleventh Amendment immunity exists for certain suits seeking injunctive and declaratory relief against state officials in their official capacities. *Ex parte Young*, 209 U.S. 123 (1908); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State."). "Under the doctrine established in *Ex parte Young*, a plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective. A plaintiff may not use this doctrine to adjudicate the legality of past conduct." *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (summary order) (citations and internal quotation marks omitted). "It is beyond dispute that *Ex parte Young* actions may be maintained for violations of Title II of the ADA, [and] § 504 of the Rehabilitation Act[.]" *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 333 (E.D.N.Y. 2014) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly

characterized as prospective." *Marino*, 18 F. Supp. 3d at 333 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Because Ms. Riccio has sought leave to amend her Complaint to bring claims against Judge Dranginis of the CBEC in her official capacity, the Court will consider whether her claims for injunctive relief satisfy the requirements of *Ex parte Young*.[5]

Ms. Riccio asserts that any claims against Judge Dranginis would be brought "for purposes of prospective relief only" Mot. to Amend at 1, and contends that while she is "willing to attempt to take the bar exam again" CBEC's conduct "lead[s] [her] to wonder whether taking the bar exam is even worth the likely lack of ADA compliance to follow absent a court order instructing the head of the CBEC to comply with the ADA." Opp'n re CBEC at 15–16.

CBEC opposes Ms. Riccio's motion to amend, arguing that amendment would be futile because Ms. Riccio does not allege an ongoing violation of federal law or seek prospective relief. CBEC further asserts "that [Ms. Riccio] is 'willing' to retake the bar does not demonstrate she will do so, and certainly does not show any substantial likelihood that CBEC would improperly deny a request for accommodation if she does retake the bar."

The Court agrees.

Ms. Riccio asks the Court to order injunctive relief requiring: (1) her admission to the bar, or, in the alternative, (2) ordering "the Connecticut Bar Examining Committee conduct the hearing it should have undertaken upon being given notice by the Plaintiff of the system crashes relating to the Connecticut bar exam and the impact on the loss of Plaintiffs medical accommodation of double-time to take the bar" Am. Compl. ¶ 62; *see also id.* ¶ 70 (requesting injunctive relief

---

[5] As CBEC notes, and Ms. Riccio does not dispute, "CBEC is a State agency, and *Ex Parte Young* 'has no application in suits against the States and their agencies[.]'" CBEC Mot. at 28–29 (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

"mandating: 1) admission of plaintiff to the bar; or alternatively 2) mandate that the Connecticut Bar Examining Committee conduct the hearing it should have undertaken upon given notice of the system software crashes relating to the Connecticut, July 2021 remote bar exam."); Proposed Amended Complaint, ECF No. 42-1 ¶¶ 66, 75 (Jan. 23, 2025) (requesting same injunctive relief).

Ms. Riccio alleges that CBEC granted her request for a medical accommodation for the July 2021 CBE and that CBEC no longer uses the Examsoft platform to administer the CBE, *see* Am. Compl. ¶ 24, 28, 32, and thus she fails to allege ongoing harm. Moreover, because Ms. Riccio seeks a reconsideration of the CBEC's previous decision concluding that she was not successful on the CBE, she seeks retroactive, not prospective, relief, and thus her claim is barred by the Eleventh Amendment. *See Wilson v. Emond*, No. 3:10-CV-659 VLB, 2011 WL 494777, at *9 (D. Conn. Feb. 5, 2011) ("The relief Wilson seeks is merely a retroactive attempt to reverse the outcome of the CBEC's initial decision that is barred by the Eleventh Amendment." (citing *Bd. of Educ. v. Schulz*, 290 F.3d 476, 480 (2d Cir.2002) ( "[R]etrospective relief . . . is precluded by the Eleventh Amendment"))).

As a result, Ms. Riccio fails to demonstrate that *Ex Parte Young* applies to her requests for injunctive relief against CBEC, and her claims for injunctive relief are therefore barred under Eleventh Amendment immunity. *See T.W. II*, 110 F.4th at 94 ("[T]he doctrine of *Ex parte Young* permits federal courts to grant injunctions against state officials, but it only permits injunctions to prevent future violations of federal law.").

Accordingly, Ms. Riccio's claims against CBEC are dismissed for lack of jurisdiction as sovereign immunity bars these claims.

### B.  Article III Standing

Article III of the Constitution provides federal courts with power that "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting Art. III § 2). The doctrine of standing is "rooted in the traditional understanding of a case or controversy." *Id.* at 338. To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020) (quoting *Spokeo, Inc.*, 578 U.S. 330 at 338).

In addition, as discussed above, Title III of the ADA generally prohibits discrimination on the basis of disability in public accommodations. "To state a claim under Title III, [a Plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008); *see also Krist v. Kolombos Rest Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012).

A plaintiff can establish standing to bring a claim under Title III if : "(1) she has alleged past injury under the ADA . . .; (2) it is reasonable to infer from her complaint that this discriminatory treatment will continue; and (3) it is also reasonable to infer, . . ., that [she] intends to return to [the defendant accommodation] in the future." *Camarillo*, 518 F.3d at 158. Injunctive relief is the only remedy available to private individuals under Title III of the ADA. *See Powell v. National Bd. Of Medical Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.").

Examsoft argues that Ms. Riccio lacks standing to bring her Title III claims because Ms. Riccio "fail[s] to allege that she has any intention of taking the bar exam again," and "concedes that Examsoft is no longer the software provider for the Connecticut bar examination." Examsoft Mot. at 3–4.

In response, Ms. Riccio argues that damages are available under certain provisions of the ADA.

In reply, Examsoft argues that the provisions Ms. Riccio discusses in her brief, Title II of the ADA and Title VII of the Civil Rights Act of 1964, do not apply to her claims against Examsoft, and "all the injunctive measures sought are directed to the [CBEC], not Examsoft."

The Court agrees.

Ms. Riccio may only seek injunctive relief on her Title III claim. *See Powell*, 364 F.3d at 86. Here, she seeks admission to the Connecticut bar and relief with respect to the CBE examination, *see* Am. Compl. ¶ 62, ¶ 70 (requesting injunctive relief "mandating: l) admission of plaintiff to the bar; or alternatively 2) mandate that the Connecticut Bar Examining Committee conduct the hearing it should have undertaken upon given notice of the system software crashes relating to the Connecticut, July 2021 remote bar exam."). Ms. Riccio alleges, however, that CBEC "switched to ILG Technologies, whose software administers bar exams and used the ILG software for the February 2022 bar exam." Am. Compl. ¶ 28. As a result, even assuming without deciding that Ms. Riccio has a viable Title III claim against Examsoft, because she does not allege that Examsoft currently provides the platform used for the CBE, it is "not reasonable to infer" that "discriminatory treatment will continue" or that Ms. Riccio will use Examsoft's platform to take the CBE in the future. *See Camarillo*, 518 F.3d at 158

Accordingly, Ms. Riccio lacks standing to bring a Title III claim against Examsoft.

### C. The Remaining Claims[6]

Having decided to dismiss Ms. Riccio's federal claims, the Court must determine whether to exercise supplemental jurisdiction over her state law claims against Examsoft.[7] *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350 (1988) and citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 446–47 (2d Cir. 1998)). "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors

---

[6] Because the Court has dismissed Ms. Riccio's ADA and Section 504 claims under Rule 12(b)(1), the Court does not address Defendants' arguments to dismiss these claims under Rule 12(b)(6).While CBEC argues that Ms. Riccio fails to plead a claim under the ADA and Section 504, because the Court has already determined that sovereign immunity bars claims against CBEC, it does not consider these arguments here. As discussed above, however, Ms. Riccio has pled a plausible claim for a violation of the ADA and Section 504 against CBEC. *See supra* Section III.A.1.i; *see also B.C. v. Mount Vernon City Sch. Dist.*, No. 11 CV 1411 VB, 2014 WL 4468082, at *6 (S.D.N.Y. Aug. 28, 2014) ("Because the ADA and Section 504 impose 'nearly identical' requirements, courts 'consider the merits of these claims together.'" (quoting *Disabled in Action v. N.Y.C. Bd. of Elections*, 752 F.3d 189, 196 (2d Cir. 2014)) , *aff'd sub nom. B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152 (2d Cir. 2016), *and aff'd sub nom. B.C. v. Mount Vernon Sch. Dist.*, 660 F. App'x 93 (2d Cir. 2016)

[7] While Ms. Riccio alleges that Examsoft is "Delaware corporation with its principal place of business . . . in Texas," she does not allege that the amount in controversy exceeds $75,000 such that this Court has diversity jurisdiction over her state law claims under Section 1332. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States").

... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Cohill*, 484 U.S. at 350 n.7). As the Second Circuit has emphasized, however, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).

While Ms. Riccio does not plead diversity jurisdiction in her Complaint, she does allege that Examsoft is not domiciled in Connecticut, and thus any state law claims asserted in state court have the potential to be removed to federal court. Because this case does not involve any matters of first impression under state law, and given the potential of later removal to federal court, the Court finds that "judicial economy, convenience, fairness, and comity" weigh in favor of exercising supplemental jurisdiction over Ms. Riccio's state law claims, and will address the merits of her claims.

Examsoft argues that Ms. Riccio's state claim for negligence, and, to the extent she alleges other state claims for "negligence, intentional and negligent misrepresentations, and breach of contract," *see* Am. Compl. ¶ 80, should be dismissed for failure to plead a plausible claim. Examsoft Mot. at 8–12.

Ms. Riccio does not address this argument in her motion.[8]

---

[8] Because Ms. Riccio does not address Examsoft's motion to dismiss her state law claims in her opposition brief, the Court may conclude that she has waived her state claims. *See Palmer v. City of New York*, 564 F. Supp. 3d 221, 238 (E.D.N.Y. 2021) ("A federal court may deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in opposition papers the defendant's arguments for dismissal."). Consistent with the Second Circuit's preference, to the extent possible, to decide cases on the merits, *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (The Second Circuit has "oft-stated [its] preference for resolving disputes on the merits."), the Court nevertheless will address these claims.

### 1.  The Breach of Contract Claim

"Under Connecticut law, a breach of contract claim has four elements: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages." *Prysmian Cables & Sys. USA LLC v. ADT Com. LLC*, 665 F. Supp. 3d 236, 244 (D. Conn. 2023) (citing *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014)).

Here, the Amended Complaint does not include any allegations from which the existence of a contract, whether express or implied, between Examsoft and Ms. Riccio may be plausibly inferred, and thus she fails to state a claim for breach of contract. *See Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) ("The existence of a contract is a necessary element of a claim for breach of contract.").

Accordingly, she lacks a viable breach of contract claim.

### 2.  The Intentional and Negligent Misrepresentation Claim

"Intentional misrepresentation, or common law fraud, is composed of four elements: '(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury.'" *Modise v. CareOne Health Servs., LLC*, 638 F. Supp. 3d 159, 187 (D. Conn. 2022) (quoting *Sturm v. Harb Dev., LLC*, 2 A.3d 859, 872 (Conn. 2010)).

A negligent misrepresentation can occur when "in the course of [an individual's] business, profession or employment . . . [he] supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or

communicating the information." *Kramer v. Petisi*, 940 A.2d 800, 805 (Conn. 2008). "An action for negligent misrepresentation requires plaintiff to prove that (1) defendant made a misrepresentation to plaintiff, (2) plaintiff reasonably relied upon that misrepresentation, and (3) plaintiff suffered pecuniary harm as a result." *Izzo v. Cyril-Scott Corp.*, No. 3:10CV1954, 2012 WL 13033133, at *3 (D. Conn. July 3, 2012) (citing *Rafalko v. Univ. of New Haven*, 19 A.3d 215, 221 (Conn. App. 2011)). In contrast to a negligent representation, an intentional or fraudulent misrepresentation is "knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." *Kramer*, 940 A.2d at 806 n.9 (citation and internal quotation marks omitted).

Ms. Riccio does not allege that Examsoft made any false statements, let alone that it intentionally did so. To the extent the Court may infer that Examsoft's alleged July 27, 2021 e-mail "stating that some applicants had faced technical difficulties and therefore their time would be extended," Am. Compl. ¶ 34, was a false statement, Ms. Riccio fails to allege that she was induced to rely on this statement, or that such reliance would be reasonable.

Accordingly, the Amended Complaint fails to state a claim for intentional and negligent misrepresentation.

### 3. The Negligence Claim

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *McDermott v. State*, 113 A.3d 419, 425 (Conn. 2015) (quoting *LePage v. Horne*, 809 A.2d 505, 510 (Conn. 2002)). "Contained within the first element, duty, there are two distinct considerations.... First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the

scope of that duty." *LePage*, 809 A.2d at 510 (alteration in original) (citations omitted). "The issue of whether a duty exists is a question of law." *Id.* at 511.

"Duty is a legal conclusion about relationships between individuals." *Mazurek v. Great Am. Ins. Co.*, 930 A.2d 682, 690 (Conn. 2007) (quoting *Murdock v. Croughwell*, 848 A.2d 363 (Conn. 2004)). "[T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Id.*

"In evaluating 'whether public policy suggests the imposition of a duty,' Connecticut courts look to four factors: '(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions.'" *Batchelar v. Interactive Brokers, LLC*, 751 F. App'x 55, 60 (2d Cir. 2018) (citing *Ruiz v. Victory Prop., LLC*, 107 A.3d 381, 393 (Conn. 2015)).

Moreover, "[t]o prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries." *Paige v. Saint Andrew's Roman Cath. Church Corp.*, 734 A.2d 85, 90 (Conn. 1999). "Connecticut requires plaintiffs to demonstrate that two elements exist in order to meet the standard for legal causation: cause in fact and proximate cause." *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 184 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018). "The test for cause in fact is, simply, would the injury have occurred were it not for the actor's

conduct," and "the test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries." *Paige*, 734 A.2d at 91.

Here, Ms. Riccio has not alleged that Examsoft owed a duty of care to test takers using its platform, nor has she submitted argument that the Court should find that public policy should impose such a duty.

Accordingly, Ms. Riccio fails to state a claim for negligence.

### D. Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend

a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Ms. Riccio fails to show that Congress's abrogation of Eleventh Amendment immunity is valid as to her ADA claims against CBEC, and thus any amendment of those claims would be futile. *See T.W. II*, 110 F.4th at 91 ("Title II of the ADA does not validly abrogate sovereign immunity in the context of professional licensing").

Likewise, Ms. Riccio's claims for injunctive relief relate to her admission to the bar and/or accommodations in taking the CBE, and thus, because Examsoft does not currently administer the CBE, any amendment to include Title III claims against Examsoft would be futile as she lacks standing to bring such claims. *See Powell*, 364 F.3d at 86 ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.").

Accordingly, Ms. Riccio's ADA claims against CBEC and Examsoft are dismissed without prejudice for lack of jurisdiction, but without leave to amend.[9]

Ms. Riccio has moved for leave to amend to include claims against Judge Dranginis in her official capacity. As discussed above, however, Ms. Riccio's ADA claims against CBEC are barred under Eleventh Amendment immunity, and any amendment to include claims against Judge Dranginis would be futile, as she does not seek prospective relief under *Ex parte young*.

---

[9] When a federal court lacks subject matter jurisdiction, it may not dismiss a case with prejudice. *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").

As a result, because Ms. Riccio's proposed amendment would be futile, the Court denies her motion for leave to amend. The Court, however, will allow Ms. Riccio another opportunity to amend her Complaint to the extent she can plausibly allege ongoing violations of federal law and seek prospective relief. *See T.W. II*, 110 F.4th at 94 ("[T]he doctrine of *Ex parte Young* permits federal courts to grant injunctions against state officials, but it only permits injunctions to prevent future violations of federal law.").

As for Ms. Riccio's Section 504 claims, while Ms. Riccio has not alleged facts rebutting CBEC's showing that it does not accept federal funding, the Court will allow Ms. Riccio an opportunity to move for leave to amend on the issue of whether CBEC receives federal funding, to the extent she can state a plausible basis for inferring that, despite the evidence CBEC has presented, there is nonetheless reason to believe CBEC may receive federal funding. *See Makarova*, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

Finally, although Ms. Riccio fails to plead a plausible state law claim, the Court will allow her to amend her state law claims, to the extent she can remedy the deficiencies identified herein. The Court, however, may decline to exercise supplemental jurisdiction over Ms. Riccio's state law claims, if she cannot plausibly allege a basis for federal subject matter jurisdiction. *See Kolari*, 455 F.3d at 122 ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quotation omitted)).

Accordingly, the Court denies Ms. Riccio's motion to amend, ECF No. 42, and denies leave for her to move to amend her ADA claims, but grants leave to amend as to all other claims as consistent with this Ruling and Order.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss, ECF Nos. 22 and 35, are **GRANTED**.

Ms. Riccio's motion to amend, ECF No. 42, is **DENIED**.

Ms. Riccio's ADA claims against CBEC and Examsoft are dismissed without prejudice for lack of jurisdiction but without leave to amend.

Ms. Riccio may move for leave to amend her Complaint only as to the following claims no later than **September 5, 2025**:

1) To the extent she can plausibly allege ongoing violations of federal law and seeks prospective relief, Ms. Riccio may move for leave to amend to bring claims for injunctive relief as to Judge Dranginis in her official capacity.

2) To the extent she can state a plausible basis for inferring that CBEC may receive federal funding, Ms. Riccio may move for leave to amend on the issue of whether CBEC receives federal funding such that CBEC has waived its sovereign immunity under Section 504.

3) To the extent she can remedy the deficiencies identified herein, Ms. Riccio may move for leave to amend her state law claims against Examsoft, although the Court may decline to exercise supplemental jurisdiction over such claims if Ms. Riccio fails to allege a basis for federal subject matter jurisdiction.

**SO ORDERED** at New Haven, Connecticut, this 1st day of August, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE