**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOANN LYNN RICCIO,<br>*Plaintiff*,<br><br>v.<br><br>EXAMSOFT WORLDWIDE, INC. and CONNECTICUT BAR EXAMINING COMMITTEE,<br>*Defendants*. | No. 3:24-cv-955 (VAB) |

**RULING AND ORDER ON PENDING MOTIONS**

Joann Lynn Riccio has sued Examsoft Worldwide, Inc. ("Examsoft") and the Connecticut Bar Examining Committee ("CBEC") (collectively, the "Defendants") for alleged violations of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and various state law claims.

The Court granted the Defendants' motion to dismiss but allowed Ms. Riccio to move for leave to amend her Complaint. Ruling and Order on Motion to Dismiss at 1–2, ECF No. 54 ("MTD Ruling").

Ms. Riccio has now moved for leave to amend her Complaint. Mot. for Leave to Amend Compl., ECF No. 56 ("Mot. to Amend").

Ms. Riccio has also moved to stay the case pending a hearing on her Freedom of Information Act ("FOIA") request regarding whether CBEC receives federal funding. Pl.'s Mot. to Stay, ECF No. 70 ("Mot. to Stay"). Subsequently, she has moved for leave to supplement the record in support of this motion. Pl.'s Mot. for Leave to Supplement the Record in Supp. of Pl.'s Pending Mot. to Stay, ECF No. 78 ("Mot. to Supplement").

For the following reasons, the motion for leave to amend is **DENIED**; the motion to stay and motion to supplement are **DENIED** as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Allegations

During the COVID-19 pandemic, CBEC, in conjunction with ExamSoft, allegedly administered the Connecticut Bar Examination ("CBE") remotely. Proposed Second Am. Compl. ¶¶ 24–25.

On July 27, 2021, Ms. Riccio was allegedly scheduled to take the CBE remotely with an approved medical accommodation of double time due to her disability. *Id.* ¶¶ 27–28.

The ExamSoft platform allegedly crashed once on July 27, 2021, and twice on July 30, 2021. *Id.* ¶ 30. Allegedly due to the crash, Ms. Riccio did not receive her full double-time accommodation and did not meet the passing rate for the bar. *Id.*

### B. Procedural History

On August 1, 2025, the Court granted the Defendants' motions to dismiss and denied Ms. Riccio's motion to amend. MTD Decision at 1–2. The Court allowed Ms. Riccio to move for leave to amend her Complaint as to the following specific claims:

> 1) To the extent she can plausibly allege ongoing violations of federal law and seeks prospective relief, Ms. Riccio may move for leave to amend to bring claims for injunctive relief as to Judge Draginis in her official capacity.
>
> 2) To the extent she can state a plausible basis for inferring that CBEC may receive federal funding, Ms. Riccio may move for leave to amend on the issue of whether CBEC receives federal funding such that CBEC has waived its sovereign immunity under Section 504.

[1] The Court assumes familiarity with the factual and procedural background of this case, as detailed in the Court's previous decision on the motion to dismiss, *see* Ruling and Order on Mot. to Dismiss, ECF No. 54, and focuses on the relevant background for the pending motions.

> 3) To the extent she can remedy the deficiencies identified herein, Ms. Riccio may move for leave to amend her state law claims against Examsoft, although the Court may decline to exercise supplemental jurisdiction over such claims if Ms. Riccio fails to allege a basis for federal subject matter jurisdiction.

*Id.* at 2.

On September 4, 2025, Ms. Riccio moved for leave to amend her Complaint. Mot. to Amend.

On October 24, 2025, Examsoft filed its opposition to the motion. Mem. of L. in Opp'n to Pl.'s Mot. for Leave to Amend the Compl., ECF No. 61 ("Examsoft Opp'n to Mot. to Amend").

On October 27, 2025, CBEC filed its opposition to the motion. CBEC's Opp'n to Mot. for Leave to Amend, ECF No. 63 ("CBEC Opp'n to Mot. to Amend").

On December 5, 2025, Ms. Riccio filed her replies. Pl.'s Mem. of L. in Opp'n to Def. Examsoft Obj. to Pl.'s Mot. for Leave to Amend the Compl., ECF No. 68; Pl.'s Mem. of L. in Opp'n to Def. Connecticut Bar Examining Committee's Obj. to Pl.'s Mot. for Leave to Amend the Complaint, ECF No. 69.

On March 13, 2026, Ms. Riccio filed a motion to stay the case. Mot. to Stay, ECF No. 70.

On April 2, 2026, the Defendants filed an opposition to the motion. Defs.' Joint Opp'n to Pl.'s Mot. to Stay, ECF No. 71 ("Opp'n to Mot. to Stay").

On April 13, 2026, Ms. Riccio filed her reply. Pl.'s Reply in Supp. of Mot. to Stay, ECF No. 72.

On June 4, 2026, Ms. Riccio filed a motion for leave to supplement the record in support of her motion to stay. Mot. to Supplement, ECF No. 73.

On June 18, 2026, CBEC filed its opposition to the motion. Def. Connecticut Bar Examining Committee's Opp'n to ECF No. 73, Pl.'s Mot. for Leave to Supplement the Record in Supp. of Pl.'s Pending Mot. to Stay, ECF No. 74.

On June 24, 2026, Ms. Riccio filed her reply. Pl.'s Reply to Def. Connecticut Bar Examining Committee's Opp'n to Pl.'s Mot. for Leave to Supplement the Record, ECF No. 76.

On June 25, 2026, the Court issued an order setting deadlines for any supplemental briefing. Order, ECF No. 77.

On July 9, 2026, Ms. Riccio filed supplemental briefing. Pl.'s Mem. in Support of the Second Mot. to Amend/Correct Amended Complaint, ECF No. 78.

On July 23, 2026, CBEC filed its response to Ms. Riccio's supplemental briefing. CBEC's Response to Mem. in Support of Mot., ECF No. 79.

On August 4, 2026, Ms. Riccio filed her reply to CBEC's response. Pl.'s Response, ECF No. 80.

## II. STANDARD OF REVIEW

### A. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within twenty-one days of service or twenty-one days after service of a required responsive pleading or motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Rule 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of

amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)").

### B. Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012); *see also Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court *may* decide in its discretion to stay civil proceedings when the interests of justice seem to require such action." (citation modified)); *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) ("Accordingly, this Court has long recognized that a district court possesses inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.").

"The person seeking a stay 'bears the burden of establishing its need.'" *Louis Vuitton Malletier S.A.*, 676 F.3d at 97.

## III. DISCUSSION

The Court first addresses the issue of sovereign immunity, and then addresses Ms. Riccio's state law claims, to the extent necessary.

### A. Sovereign Immunity

Consistent with the Court's Ruling and Order on the Motion to Dismiss, Ms. Riccio's proposed Second Amended Complaint attempts to show that her claims are not barred by the

Eleventh Amendment. Specifically, she argues that (1) she has alleged sufficient facts to plausibly infer that CBEC may receive federal funding, such that sovereign immunity is waived under Section 504 of the Rehabilitation Act, and (2) that she alleges an ongoing violation of her federal rights, such that she may seek prospective relief under *Ex parte Young*.

The Court addresses each argument in turn.

**1. The Rehabilitation Act Claims**

There are three ways a State entity may waive its immunity to suit under Section 504 of the Rehabilitation Act:

> First, the entity may *directly* request and receive federal financial assistance that is conditioned on Section 504 coverage. Second, the entity may be a "program or activity" of a "department, agency, special purpose district, or other instrumentality of a State or of a local government," "any part of which" receives federal aid. 29 U.S.C. § 794(b). And finally, the entity may *indirectly* receive federal financial assistance through *another* entity that requests and receives the Federal financial assistance in the first instance and then *extends* that money to the non-requesting entity.

*T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 93 (2d Cir. 2021) (emphasis in original).

The Court previously found that "Ms. Riccio's allegations that the Connecticut Judicial Branch accepted federal funding [was] insufficient to find that the CBEC, a unit of the state judicial system, waived its sovereign immunity under Section 504." MTD Decision at 19 (citing *T. W.*, 996 F.3d at 101); *see also T. W.*, 996 F.3d at 101 ("[W]hile there is no bright-line test for determining what constitutes a department, the entire judicial system is *not* generally a 'department, agency, special purpose district, or other instrumentality' for Section 504 purposes." (internal quotation marks and citations omitted) (emphasis in original).

Additionally, where "CBEC has represented that it is a self-funded entity that is administratively independent from the Judicial Branch and that it has not directly or indirectly received federal funding," MTD Decision at 19, the Court found that "CBEC has met its burden

in showing that it is entitled to sovereign immunity on the Section 504 claim, and Ms. Riccio has failed to show by a preponderance of the evidence that CBEC has waived sovereign immunity such that this Court has jurisdiction over her claims." *Id.* at 20. The Court, nonetheless, allowed Ms. Riccio to move for leave to amend if she could show a "plausible basis for inferring that . . . CBEC may receive federal funding." *Id.* at 21.

Ms. Riccio argues that her Proposed Second Amended Complaint "plausibly support[s] [CBEC's] waiver of sovereign immunity under Section 504." Mot. to Amend at 2. She argues that her FOIA request shows that the Connecticut Judicial Branch received federal funding, and does not show that any funding was limited to a discrete subdivision of the Judicial Branch that excludes CBEC. Riccio Supp. Br. at 7. Further she argues that CBEC is an operation of the Judicial Branch, such that its waiver of sovereign immunity by receipt of federal funds applies to the CBEC as well. *Id.* at 8–9.

CBEC argues that Ms. Riccio's allegations are insufficient to show that CBEC waived sovereign immunity. It argues that CBEC is not part of any larger department, agency, or instrumentality within the Judicial Branch, and thus can only waive sovereign immunity by directly or indirectly receiving federal funding, which it has shown it did not. CBEC Opp'n to Mot. to Amend at 6. In its view, allegations that the Judicial Branch received federal funding for staff expenses and technology assistance to administer the Bar Exam, or that the Judicial Branch reimbursed CBEC for salaries, are insufficient to show waiver, as these are indirect economic benefits not actual receipt of federal funding. *Id.* at 9–10. Further, CBEC argues that such allegations cannot constitute a knowing waiver of sovereign immunity. *Id.* at 11.

The Court agrees.

Ms. Riccio has not presented any plausible basis to support waiver under the first theory: that CBEC "*directly* request[ed] and receive[d] federal financial assistance that [was] conditioned on Section 504 coverage." *T.W.*, 996 F.3d at 93 (emphasis in original); *see* Proposed Second Am. Compl. ¶ 54 ("Up to $500,000 for the fiscal year ending June 30, 2022, to the Judicial Department for Personal Services, for information technology consultants to complete necessary system changes."). There is nothing in this record plausible enough to support her allegation that "federal funding . . . for information technology consultants [was] . . . used by the Connecticut Bar Examining Committee for the remote July 2021 bar." Proposed Second Am. Compl. ¶ 56. CBEC has represented it is self-funded, and Ms. Riccio has not presented any evidence to suggest otherwise. *See* Decl. of Lisa Valko ¶ 12, ECF No. 22-2 ("CBEC paid all of its own expenses, including expenses related to administering the remote July 2021 bar exam, exclusively from funds generated from admission fees."); Riccio Suppl. Br. at 5 (describing FOIA requests as showing "Judicial Branch payment vouchers," not the CBEC, for technology support); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

Nor is there anything in this record plausible enough to suggest that CBEC "*indirectly* receive[d] federal financial assistance through *another* entity that request[ed] and receive[d] the Federal financial assistance in the first instance and then *extend[ed]* that money to the non-requesting entity." *T.W.*, 996 F.3d at 93 (emphasis in original).

She alleges that "the Judicial Branch will pay the staff directly through its payroll system, and CBEC will reimburse the Judicial Branch exclusively with funds generated from the bar

admission fees." Proposed Second Am. Compl. ¶ 60. She alleges similar allegations with respect to CBEC's office supplies. *See id.* ¶ 62 ("CBEC purchases office supplies and postage the same way. CBEC will decide on the purchase, and the Judicial Branch will pay the costs directly and get reimbursed by CBEC out of the admission fees.").

She alleges, based on the Declaration of Lisa Valko, that "federal funds were paid for CBEC staff salaries through the Judicial Branch who received federal funds," Proposed Second Am. Compl. ¶ 61, and that "[f]ederal funds . . . paid for CBEC office supplies through the Judicial Branch who received federal funds," *id.* ¶ 62. But office supplies are the type of "indirect economic benefits" that do not constitute waiver of sovereign immunity. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 607 (1986); *see T.W.*, 996 F.3d at 94 ("As the Supreme Court has repeatedly affirmed, if a State entity merely obtains 'indirect economic benefits' from federal funding but does not actually *receive* federal funding, it has not waived immunity." (quoting *Paralyzed Veterans of Am.*)).

In *Bartlett v. New York State Bd. of L. Examiners*, 156 F.3d 321, 330 (2d Cir. 1998), the Second Circuit concluded that a reimbursement scheme constituted waiver of sovereign immunity. There, the two state agencies received federal funding and issued vouchers for handicapped bar applicants to pay for the bar examination. *Bartlett*, 156 F.3d at 330. Applicants then submitted the vouchers to the New York State Board of Law Examiners (the "Board"), which then requested payment from the state agencies. *Id.* The Court found that this constituted waiver because "two state entities . . elected to receive federal funds and then extended that assistance to the Board in the form of vouchers for handicapped bar applicants." *Id.*

But, in *T.W.*, the Second Circuit rejected finding the Board waived immunity under a different reimbursement scheme. In 2011, the Board changed its reimbursement process so

candidates paid the Board directly and the agencies directly reimbursed candidates. *T.W.*, 996 F.3d at 94. "Because the Board does not receive federal funds directly or indirectly," the Court concluded that it had not waived immunity, even if it may have received indirect benefits. *Id*.

CBEC's reimbursement process is similar to that in *T.W.* Here, CBEC does not receive any money from the Judicial Branch. The Judicial Branch pays staff directly, and CBEC reimburses the Judicial Branch. Proposed Second Am. Compl. ¶ 60; Decl. of Lisa Valko ¶ 9. "As [the Second Circuit] emphasized in *Bartlett*, § 504 applies only to entities that *receive* federal funds." *T.W.*, 996 F.3d at 94 (emphasis in original). Because CBEC did not receive funding directly or indirectly, this Court cannot simply presume that the CBEC knowingly waived sovereign immunity through this reimbursement scheme. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 114 (2d Cir. 2001) ("[I]n assessing whether a state has made a knowing and intentional waiver, the Supreme Court has instructed that 'every reasonable presumption against waiver' is to be indulged." (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999)). The reimbursements, therefore, do not constitute an indirect waiver of sovereign immunity.

Finally, Ms. Riccio has also alleged that the CBEC is a "'program or activity' of a 'department, agency, special purpose district, or other instrumentality of a State or of a local government,' 'any party of which' receive federal aid." *T.W.*, 996 F.3d at 93. These allegations fail for two reasons.

First, the Judicial Branch is not a "department" within the meaning of Section 504. *See id.* at 101 ("[W]hile there is no bright-line test for determining what constitutes a department, the entire judicial system is not generally a department, agency, special purpose district, or other instrumentality for Section 504 purposes. (citation modified)). The Second Circuit instead has

concluded that "[w]hat precedent does exist . . . cautions against the conclusion that [Unified Court System] is the relevant department, agency, or instrumentality, such that the receipt of federal grant money by the drug, family, and other specialty courts would render the entire New York judiciary amenable to suit under Section 504." *Id.* at 97. The court then declined to extend the doctrine of waiver so broadly in light of the Supreme Court's "instruct[ion] that 'every presumption against waiver' is to be indulged." *Id.* at 98 (quoting *Garcia*, 280 F.3d at 114).

The structure of the Judicial Branch is similar to New York's Unified Court System ("UCS"). By statute, the Judicial Branch is comprised of "the Supreme Court, the Appellate Court, the Superior Court, the Office of the Chief Court Administrator and their employees and divisions, the courts of probate, and . . . the Public Defender Services Commission." Conn. Gen. Stat. § 51-1a; *see also T.W.*, 966 F.3d at 95 ("Under the umbrella of the UCS are the trial courts (the "Courts of Original Jurisdiction"), the appeals courts (the "Appellate Divisions"), and New York's highest court, the Court of Appeals."). In the absence of precedent suggesting otherwise, there is no reason to depart from *T.W.* and find the Judicial Branch to constitute a department. Doing so would expand the scope of the doctrine of waiver, contrary to the presumption against it. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999); *see also T.W.*, 996 F.3d at 99 n.4 ("We are particularly hesitant to reach a conclusion that would require a state to amend its own constitution in order to restructure its unified court system to avoid branch-wide waivers of immunity under a federal statute.").

Second, even assuming that the Judicial Branch could constitute a "department" under Section 504, CBEC is not a "program or activity" of the Judicial Branch. The Rehabilitation Act defines "program or activity" to mean "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or local government." 29 U.S.C. 794(b). State

law guides this analysis. *See T.W.*, 966 F.3d at 99. ("Next, in considering whether a particular subunit of state government is an independent department under the Rehabilitation Act, courts look to the state's characterization of the subunit under state law." (citation modified)). And "courts typically focus on how, under state law, the 'program or activity' is budgeted for and administered." *Id.*

In light of CBEC's representation that it is entirely self-funded, *see* Decl. of Lisa Valko ¶ 4, Ms. Riccio has not put forward any allegations to suggest otherwise. *See* Riccio Suppl. Br. at 5 (describing FOIA requests as showing "Judicial Branch payment vouchers," not the CBEC, for technology support). The CBEC's self-funding is indicative of it being an independent department. *See T.W.*, 966 F.3d at 99 (citing a Ninth Circuit decision that rejected finding an office of public defense to be a department of the judicial department because it had a distinct funding source); *id.* at 99–100 ("Each component has its own separate operating budgets, and each is required to compile its own individual budget, which is then forwarded to the Division of Financial Management at UCS in August or early September."); *id.* at 101 ("We conclude that the Board is certainly not an operation of the trial courts. The Courts of Original Jurisdiction and the Board are funded by separate appropriations, [and] the money that the Board receives in fees from bar examinees is not distributed in any way to the trial courts[.]").

As to administration, CBEC is comprised of attorneys residing in the state and at least one judge of the Superior Court. 2026 Conn. Practice Book § 2-3. Personnel of the "legal services division of the Office of the Chief Court Administrator may be assigned from time to time by the chief court administrator" to assist CBEC. *Id.* § 2-6. This may support finding CBEC to be "an operation" of the Superior Court and/or the Office of the Chief Court Administrator, but it does not follow that CBEC is an operation of the Judicial Branch. *Cf. T.W.* 996 F.3d at 101 (concluding

that the Board of Law Examiners is not an operation of the trial courts in part because "there is no law providing for any oversight or connection between the Board and any trial court"). Significantly, Ms. Riccio bases her allegations on the Judicial Branch allegedly receiving federal funding, not these other departments.

Taken together, there is not a plausible basis to infer that CBEC waived sovereign immunity as a program or activity of the Judicial Branch.

Accordingly, the motion for leave to amend as to her Rehabilitation Act claim will be denied. As this claim is dismissed, there is no need to stay the case pending the FOIA request, which concerned whether CBEC received federal funding.

The motion to stay and motion to supplement the record on the motion to stay thus will be denied as moot.

**2. The Injunctive Relief Claims**

Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). To bring an *Ex parte Young* claim, a plaintiff must allege an "ongoing violation of federal law" and request "relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

Ms. Riccio argues that her Proposed Second Amended Complaint alleges sufficient facts to allege claims for prospective injunctive relief against Judge Anne Dranginis in her official capacity. Mot. to Amend at 2. She alleges that she intended to sit for the February 2026 Bar exam, but registration opens October 1, 2025, and that she faces an ongoing risk of denial of ADA-accommodations. *Id.*

CBEC argues that Ms. Riccio has still not alleged an ongoing violation of federal law because at the time of filing her Proposed Second Amended Complaint, registration was not yet available. CBEC Opp'n to Mot. to Amend at 14. Additionally, it argues that she does not allege anything to suggest that CBEC is imminently likely to deny her request for an accommodation. *Id.* CBEC also argues that notwithstanding the sovereign immunity issues, Ms. Riccio lacks Article III standing because the threat of future injury is too speculative. *Id.*

The Court agrees in part, and disagrees in part.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). Thus, analyzing whether *Ex parte Young* applies to a claim does not entail "analysis of the merits of the claim." *Verizon Maryland*, 535 U.S. at 645.

Ms. Riccio alleges that she "intends to register for and take the February 2026 bar examination, but according to the Connecticut Bar Examining Committee's (CBEC) website, she cannot register until October 1, 2025," and that "[t]he violations set forth herein are ongoing, in that unless CBEC affirmatively provides reasonable accommodation, the Plaintiff will be unable to take and pass the Connecticut Bar Examination." Proposed Second Amended Compl. ¶ 67. Further, she alleges that "CBEC continues to violate the provisions of 29 U.S.C. § 794, Rehabilitation Act of 1973." *Id.* ¶ 69.

Ms. Riccio's intent to register for the February 2026 bar examination is insufficient to show an ongoing violation.[2] The *Ex parte Young* exception applies when there is a threat of a future violation. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908) ("[O]fficers of the state . . . who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."); *Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 188 (D. Conn. 2009) ("The Second Circuit has allowed plaintiffs to invoke the *Ex parte Young* exception to the Eleventh Amendment bar on federal court jurisdiction where state officials are actively violating federal law or imminently threatening acts that the plaintiff challenges as unconstitutional." (collecting cases)).

Unlike in *Ex parte Young*, Ms. Riccio does not allege threat of enforcement. Nonetheless, threat of a future violation may be sufficient to invoke the *Ex parte Young* exception. *See Babyrev v. Lanotte*, No. 16 CIV. 5421 (ER), 2018 WL 388850, at *4 (S.D.N.Y. Jan. 11, 2018) ("Neither the Supreme Court nor the Second Circuit has directly addressed whether a violation that is not currently in progress may nevertheless be considered ongoing where the possibility of a future violation exists. However, other circuit courts and district courts in this circuit have held that the challenged action need not literally be in progress to defeat a claim of sovereign immunity; rather, where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied." (internal quotation marks omitted) (collecting cases)); *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) ("Thus, Clark has alleged

[2] As subject matter jurisdiction is determined at the time a complaint is filed, *see Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" (quoting *Mollan v. Torrance,* 9 Wheat. 537, 539 (1824)), and sovereign immunity implicates the Court's subject matter jurisdiction, *see, e.g.*, *Baroni v. Port Auth. of New York & New Jersey*, 161 F.4th 48, 54 (2d Cir. 2025) ("Because state sovereign immunity is a jurisdictional limitation on the power of federal courts, it may deprive such a court of subject matter jurisdiction[.]" (internal quotation marks and citations omitted)), the fact that the February 2026 bar exam has now passed is irrelevant.

injuries stemming only from past conduct with no plausible threat of future violations. Such claims do not fall within the *Young* exception to Eleventh Amendment immunity, regardless of how the request for relief is styled."). In these cases, a plaintiff generally has to allege a likelihood that it will be subjected to a similar violation in the future. *See, e.g.*, *KM Enters., Inc. v. McDonald*, No. 11-CV-5098 ADS ETB, 2012 WL 4472010, at *11 (E.D.N.Y. Sept. 25, 2012), *aff'd,* 518 F. App'x 12 (2d Cir. 2013); *Babyrev v. Lanotte*, No. 16 CIV. 5421 (ER), 2018 WL 388850, at *5 (S.D.N.Y. Jan. 11, 2018); *Safe Haven Home Care, Inc. v. United States Dep't of Health & Hum. Servs.*, 681 F. Supp. 3d 195, 209 (S.D.N.Y. 2023), *aff'd,* 130 F.4th 305 (2d Cir. 2025).

Ms. Riccio, however, has not alleged sufficient facts to support that she is likely to be subjected to a similar violation. While she alleges that CBEC may not provide reasonable accommodations for the February 2026 examination, Proposed Second Am. Compl. ¶ 67, she also alleges that CBEC did approve her accommodations for the July 2021 examination, *id.* ¶ 27–28. Further, her alleged violations stem from a unique context of remote testing during COVID-19, where ExamSoft crashed during testing. *See, e.g.*, *id.* ¶ 33 ("Ms. Riccio experienced three separate crashes on two testing days . . . resulting in lost valuable double-time for Ms. Riccio . . . ."). She alleges however that CBEC stopped using ExamSoft and stopped administering the exam remotely. *Id.* ¶ 15. In light of these allegations, there is no plausible basis to infer that Ms. Riccio is likely to experience a similar violation of her rights, and thus she has failed to allege an ongoing violation.

Her allegation that "CBEC continues to violate the provisions of 29 U.S.C. § 794, Rehabilitation Act of 1973," Proposed Second Amended Compl. ¶ 69, is conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); *Rothstein v. UBS AG*,

708 F.3d 82, 94 (2d Cir. 2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations."). Besides her allegations regarding the February 2026 bar examination, which as discussed above do not constitute an ongoing violation, her alleged violations concern her experience with the July 2021 bar examination, which as the Court previously concluded does not constitute an ongoing harm. *See* MTD Decision at 23 ("Ms. Riccio alleges that CBEC granted her request for a medical accommodation for the July 2021 CBE and that CBEC no longer uses the Examsoft platform to administer the CBE, *see* Am. Compl. ¶ 24, 28, 32, and thus she fails to allege ongoing harm.").

Accordingly, leave to amend as to Ms. Riccio's prospective injunctive relief claims will be denied.

**B. The State Law Claims**

Having denied leave to amend as to her federal claims, the Court declines to exercise supplemental jurisdiction over Ms. Riccio's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Klein & Co. Futures v. Bd. of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, leave to amend as to her state law claims will be denied without prejudice to refiling in state court.

## IV. CONCLUSION

For the foregoing reasons, the motion for leave to amend is **DENIED**; the motion to stay and motion to supplement the motion to stay are **DENIED** as moot.

The Clerk of Court of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 28th day of August, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE